## In re RHAGAT SINGH et al.

## In re SUNDAR or SANDU SINGH et al.

### (District Court N. D. California. First Division. December 5, 1913.)

### Nos. 15,479, 15,480.

1. ALIENS (§ 54*)—EXCLUSION—HEARING—FAIR TRIAL.

　　Where, after petitioners in alien exclusion proceedings had been informed that the cases were closed, new evidence was introduced in opposition to petitioners' right to enter the United States, of which their attorneys had been informed, and also advised that they would be permitted to inspect the new evidence, and offer further evidence if they desired, the admission of such additional proof on behalf of the government did not deprive petitioners of a fair hearing.

　　[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

2. HABEAS CORPUS (§ 23*)—EXCLUSION—PERSONS LIKELY TO BECOME PUBLIC CHARGE—FINDINGS—REVIEW.

　　A finding by immigration officers that certain alien Hindoo laborers applying to enter the United States would be likely to become public charges because of there being a deep-seated prejudice in the United States against them, and, there being no demand for their labor on this account, it would be difficult for them to maintain themselves, was not reviewable on habeas corpus.

　　[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. § 23.*]

3. ALIENS (§ 49*)—IMMIGRATION RULES—ENTRY OF INSULAR POSSESSIONS—RIGHT TO LAND ON MAINLAND.

　　Immigration rule 14 as amended June 16, 1913, providing that aliens applying at continental ports and surrendering the certificate received on entering the Philippines shall on identification be permitted to land, provided it appears that at the time they were admitted to the Philippines they were not members of the excluded classes, or likely to become public charges if they proceeded thence to the mainland and were given certificates, did not entitle aliens to land in the United States, notwithstanding the finding of the immigration officers that they were liable to become public charges, on the ground that the interior departments had no power to adopt a rule which would preclude an alien once landed in any territory of the United States from thereafter freely going thence to the mainland.

　　[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 107.; Dec. Dig. § 49.*]

Habeas corpus on petition of Timothy Healy, for and on behalf of Rhagat Singh and others, and on behalf of Sundar or Sandu Singh and others. Application denied.

John L. McNab and Timothy Healy, both of San Francisco, Cal., for petitioners.

Walter E. Hettman, Asst. U. S. Atty., of San Francisco, Cal., for the government.

DOOLING, District Judge. These cases involve the right of the individuals named to land at the port of San Francisco, having already been landed at Manila and coming thence here. Upon their arrival

they were arrested, and after a hearing ordered deported as persons likely to become public charges.

It is sought to have the action of the Department of Commerce and Labor, denying their right to land and ordering their deportation, reviewed by this court, on three general grounds:

(1) Because they were not accorded a fair hearing by the immigration officers, at this port.

(2) Because there is no evidence to support the finding that each of said petitioners is a person likely to become a public charge.

(3) Because having already been permitted to land at Manila they are entitled, coming thence to the mainland, to be landed here as a matter of right, and without further examination.

[1] The assignment that the petitioners were not accorded a fair hearing by the immigration officers is predicated chiefly upon the fact that on or about August 20, 1913, and after the testimony of the petitioners had been taken and certain affidavits filed in their behalf, the petitioners and their attorneys were informed by the immigration authorities that the cases were closed, and that thereafter, on or about September 25, 1913, they were informed that the cases had not been closed on August 20th, but that the government had secured and presented other evidence in opposition to the right of petitioners to land. The contention that the hearing was unfair in this regard cannot be upheld. On September 27th the attorney for petitioners addressed to the Immigration Commissioner a letter as follows:

"This is in response to your letter advising me that new evidence has been taken by the government in the case of a group of Hindoos, and that we will now be permitted to inspect the same, and offer further evidence.

"I thank you for the courtesy of the information."

Having been accorded the opportunity to inspect the new evidence and controvert it if they desired, and having as a matter of fact presented further evidence, they were accorded a fair hearing within the meaning given those words by the adjudicated cases. When such is the case, the order of the executive officers within the authority of the statute is final, if there be any evidence at all to support their determination.

It is contended that there is no such evidence in the present cases, this being the second ground upon which the order of the immigration officers is assailed. The question presented by this assignment is of extreme importance, and its determination either way will have a wide and far-reaching effect.

[2] The department rests its action upon the right given it by statute to exclude "persons likely to become a public charge." Certain affidavits were introduced in the present cases tending to show, among other things, that the Hindoo laborers are obnoxious to very many of our people, that there exists a prejudice against them, and that comparatively few avenues are open to them in which to find employment. This showing is not made as against any particular individual petitioner, but as against the Hindoos generally as a race. In these

cases the application for the warrant of arrest was based upon the fact as set forth therein that the—

"above aliens are likely to become public charges for the reason that they are of the laboring class; that there is no demand for such labor, and there exists a strong prejudice against them in this locality."

The warrant of arrest and the order of deportation are based upon the fact as set forth in each of them:

"That the said aliens are members of the excluded classes in that they were persons likely to become public charges at the time of their entry into the United States."

The finding that they were persons likely to become public charges is based in reality, however much the immigration officers may disclaim the fact, upon the general showing and implied finding that there is a prejudice against the Hindoo, and little demand for his labor. It is true that there was a strong counter showing made by petitioners, but the matter having been passed on by the department, and there being some evidence to support the implied finding, the merits of the case in this regard are no longer open, and may not be reviewed by the courts. The question then presented, stripped of all its masks, is the following:

"May the Department of Commerce and Labor, upon a showing satisfactory to itself and a finding not open to review that a prejudice exists in this country against aliens of any race, and that there is no demand for the labor of such race, exclude all laborers of such race on the ground that they are, for such reasons, likely to become public charges?"

Stated thus, if it were a new question, I would not hesitate a moment to answer in the negative. But the Supreme Court has gone so far in holding that the findings of the department cannot be reviewed if there be any testimony at all to support them that I am not prepared to deny to it the power implied in the foregoing question. The department has the power to pass upon the facts of each individual case. And if it determine upon any substantial evidence that there is no demand for the labor of an alien applying for admission, and that a prejudice exists against him, and for these reasons conclude that, if admitted, he would be likely to become a public charge, the court cannot say, where the alien must depend upon securing labor in order to subsist, that this conclusion is so without support as to require it to be set aside. But let there be no delusion that this power, once conceded, can be used only in the case of Hindoos. It is equally applicable to every other race. Conceding the power to the Department of Labor to exclude the Hindoo laborer for this reason, we must concede to it the power to exclude, for the same reason, the laborer of any other race. It is a vast power, and one which, upon the argument of this case, I was very unwilling to believe was lodged in any executive department of the government. But an examination of the adjudicated cases shows a uniform holding that whenever an alien has had an opportunity to present such testimony as he desired to present, the conclusions of the Department of Commerce and Labor, upon the facts, are not open to review if there be any testimony to support

them. Nor can the courts inquire whether or no such conclusions are wrong. In the present cases, therefore, the department, having the right to determine the fact as to whether these petitioners are persons likely to become public charges, has determined that they are. The fact that this determination is based upon conditions existing in this country, rather than upon any particular physical or mental defect in the individual petitioners, does not in my judgment make such determination any the less final, or render it any more open to review by the courts. For a strong man unable to obtain an opportunity to labor is just as helpless as a weak one unable to perform such labor if the opportunity were afforded him. For these reasons the order of deportation cannot be disturbed because of failure of proof. There is left, then, to be considered only the third contention of petitioners, that having been permitted to land at the port of Manila, they are entitled to come to the mainland without further question.

[3] The statute provides that the Commissioner General of Immigration shall have charge of the administration of all laws relating to the immigration of aliens into the United States, and shall establish such rules and regulations, not inconsistent with law, as he shall deem best calculated for carrying out the provisions of the Immigration Act. (Act Feb. 20, 1907, c. 1134, 34 Stat. p. 898 [U. S. Comp. St. Supp. 1911, p. 499]). At the time that some of these petitioners landed in the Philippines, rule 14 of the immigration rules was as follows in so far as applicable here:

"Sec. 1. Aliens arriving in the Philippines bound for the continent shall be inspected and given a certificate signed by the insular collector of customs at Manila showing the fact and date of landing."

"Sec. 2. Aliens who, having been manifested bona fide to the Philippines and having resided there for a time, signify to the insular collector of customs at Manila an intention to go to the continent shall be furnished such certificate, as evidence of their regular entry at an insular port."

"Sec. 3. Aliens applying at continental ports and surrendering the certificate above described shall, upon identification, be admitted without further examination."

On June 16, 1913, however, the foregoing rule was amended to read as follows:

"Sec. 3. Aliens applying at continental ports and surrendering the certificate above described shall, upon identification, be permitted to land, provided it appears that at the time such aliens were admitted to the Philippines they were not members of the excluded classes, or likely to become public charges if they proceeded thence to the mainland."

Some of the petitioners here landed at Manila on June 20, 1913, after the foregoing amendment was in force. But whether they landed at Manila before or after the amendment does not seem to me to be at all material, as the amendment was in force for some time before any of them left the Philippines for the mainland. It is urged that this amendment is beyond the power of the department to enact, and that an alien once landed in any territory, or other place subject to the jurisdiction of the United States, may freely go thence to any portion of the United States whether it be the mainland or any of its island possessions. With this conclusion I am unable to agree.

There may be reasons for rejecting an alien at continental ports which would not exist if he were applying to enter the Philippines. Labor and climatic conditions and standards of living are so diverse that one going to the Philippines who would not there be likely to become a public charge might well be likely to become such if he proceeded thence to the mainland. A more rigid test may therefore well be applied to those seeking admission to the mainland than that applied to those seeking admission to the Philippines. And as the amendment to the immigration rules, providing that the possession of a certificate of lawful entry into the Philippines should not be conclusive as to the holder's right to enter a continental port, was in effect at the time that all of these petitioners sailed from Manila, the question was properly open for investigation by the immigration officers here as to whether or no, at the time these aliens were admitted to the Philippines, they were likely to become public charges if they proceeded thence to the mainland. This question was investigated upon their arrival here, and was decided adversely to the petitioners. As we have heretofore seen, this decision is final and not subject to review.

The application for a writ of habeas corpus must therefore be denied; and it is so ordered.