## Ex parte HIDEKUNI IWATA.

(District Court, S. D. California, S. D. January 2, 1915.)

1. ALIENS ⬅18—DEPORTATION—DEPARTMENT OF LABOR—JURISDICTION.

The Department of Labor has been given full and complete authority to investigate and determine whether aliens have so violated the laws of the United States as, pursuant to such laws, to justify and require their deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 70–72; Dec. Dig. ⬅18.]

2. CONSTITUTIONAL LAW ⬅318—DEPORTATION—HEARING—"DUE PROCESS OF LAW."

In hearings in deportation proceedings held by officers of the Department of Labor, ordinary judicial procedure, with its consequent limitations, is not necessarily to be followed; "due process of law" being secured if the aliens are given substantial notice of the reasons urged why they should be deported, together with a fair and reasonable opportunity to present controverting evidence and a reasonable opportunity to secure counsel, and if the whole proceeding is in good faith and the determination finally arrived at is fair, and not arbitrary, or induced by a manifest disregard of the aliens' rights.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949; Dec. Dig. ⬅318.

For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

3. ALIENS ⬅54—DEPORTATION—HEARING.

Where the procedure in a deportation proceeding followed the rules laid down by the Department of Labor, and a full and fair opportunity was given the alien to show cause, if any he had, why he should not be deported, and all the evidence used against him was exhibited to him, and he apparently made use of every means at his command to substantiate his innocence of the charges made, a deportation order was not reviewable on habeas corpus.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬅54.]

4. ALIENS ⬅54—DEPORTATION PROCEEDINGS—EVIDENCE.

Under Immigration Rule 22, subd. 4, providing that in deportation proceedings counsel for the alien shall be permitted to offer evidence to meet any evidence "theretofore" or thereafter presented by the government, the word "theretofore" referred to evidence used in making the application for the warrant as well as that received subsequently, so that the evidence so used to obtain the warrant was admissible at the hearing.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬅54.]

5. ALIENS ⬅54—DEPORTATION—GROUNDS—EVIDENCE.

Evidence *held* to justify deportation of an alien on the ground that, being domiciled within the United States, he had been found connected with the management of a house of prostitution, and assisting, protecting, and promising to protect prostitutes from arrest, and been found receiving, sharing in, and deriving benefit from their earnings.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬅54.]

Habeas corpus to review a deportation order issued against Hidekuni Iwata. Writ dismissed, and alien remanded for deportation.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Albert Schoonover, U. S. Atty., of San Diego, Cal., and Harry R. Archbald, Asst. U. S. Atty., of Los Angeles, Cal.

Frank Pierce, of Los Angeles, Cal., for defendant.

BLEDSOE, District Judge. This is a proceeding in habeas corpus intended to test the validity of an order of deportation issued against the petitioner by the Secretary of Labor, dated the 12th day of November, 1914, wherein the petitioner, a member of the Japanese race and a subject of Japan, is ordered deported to the country whence he came, because of the fact that, being domiciled within the United States, he has been found connected with the management of a house of prostitution, has been found assisting, protecting, or promising to protect from arrest a prostitute, and that he has been found receiving, sharing in, or deriving benefit from the earnings of prostitutes.

The claim is made in the petition for the writ that the facts giving cause for his deportation were insufficiently alleged in the original warrant of arrest, in that there was no statement therein as to the precise facts concerning the petitioner with respect to his being connected with a house of prostitution, nor were any of the circumstances detailed showing where or in what manner he had been found assisting, protecting, or promising to protect from arrest any prostitute or prostitutes, nor was it shown or alleged how it was claimed that he had been receiving, sharing in, or deriving benefit from the earnings from prostitutes. The further claim is made that he was not accorded the full and fair hearing to which he was entitled under the law, that evidence was improperly taken and received against him, and that the evidence, fairly considered, was legally insufficient to justify his deportation.

[1] Under the decisions, as I read them, of the United States Supreme Court, the powers of this court in a proceeding of this character are extremely limited. Congress has given to the Department of Labor, having control of all immigration matters of the government, fullest and completest authority to investigate and determine whether or not aliens residing within the limits of the United States have so violated the laws of the United States as, pursuant to the provisions of such laws, to justify and require their deportation to their native land.

[2] In the hearings to be held by the departmental officers the ordinary judicial procedure, with its consequent limitations, is not necessarily to be followed. "Due process of law" is secured, as to such aliens as may be brought before the immigration officers, if they are given substantial notice of the reasons urged why they should be deported from this country, if they are given a fair and reasonable opportunity to present evidence controverting any evidence adduced by the department and tending to exculpate them from the commission of the unlawful acts urged against them, if they are afforded at some stage of the hearing reasonably early therein, so as to be of some substantial advantage to them, the opportunity to secure and have the advice and assistance of counsel, and if it appears, upon the whole proceeding, that the department acted in good faith, and that its determi-

nation, as finally arrived at, was fair, and not an arbitrary one, or one induced by a manifest disregard of the alien's rights in the premises. The proceeding being of necessity essentially summary in its nature, over-refined niceties in the way of pleading are neither to be expected nor demanded. So, too, questions as to the weight of evidence and credibility of witnesses are peculiarly within the province of the departmental officers. In Fong Yue Ting v. United States, 149 U. S. 698, at page 707 et seq., 13 Sup. Ct. 1016, 1019 (37 L. Ed. 905), it was said:

"The right of a nation to expel or deport foreigners, who have not been naturalized or taken any steps towards becoming citizens of the country, rests upon the same grounds, and is as absolute and unqualified as the right to prohibit and prevent their entrance into the country. The power to exclude or to expel aliens, being a power affecting international relations, is vested in the political departments of the government, and is to be regulated by treaty or by act of Congress, and to be executed by the executive authority according to the regulations so established, except so far as the judicial department has been authorized by treaty or by statute, or is required by the paramount law of the Constitution, to intervene. In Nishimura Ehiu's Case, it was adjudged that, although Congress might, if it saw fit, authorize the courts to investigate and ascertain the facts upon which the alien's right to land was made by the statutes to depend, yet Congress might intrust the final determination of those facts to an executive officer, and that, if it did so, his order was due process of law, and no other tribunal, unless expressly authorized by law to do so, was at liberty to re-examine the evidence on which he acted, or to controvert its sufficiency. 142 U. S. 660 [12 Sup. Ct. 336, 35 L. Ed. 1146]. The power to exclude aliens and the power to expel them rest upon one foundation, are derived from one source, are supported by the same reasons, and are in truth but parts of one and the same power. The power of Congress, therefore, to expel, like the power to exclude, aliens, or any specified class of aliens, from the country, may be exercised entirely through executive officers."

So, also, the same court, in Japanese Immigrant Case, 189 U. S. 86, at page 101, 23 Sup. Ct. 611, 614 (47 L. Ed. 721), said, in holding that the fundamental principles constituting "due process of law" might not be disregarded by the executive officers of the government in deportation proceedings:

"One of these principles is that no person shall be deprived of his liberty without opportunity, at some time, to be heard, before such officers, in respect of the matters upon which that liberty depends—not necessarily an opportunity upon a regular, set occasion, and according to the forms of judicial procedure, but one that will secure the prompt, vigorous action contemplated by Congress, and at the same time be appropriate to the nature of the case upon which such officers are required to act."

In a deportation case very similar to the one at bar, through Mr. Justice Day, the same court (Low Wah Suey v. Backus, 225 U. S. 460, at page 468, 32 Sup. Ct. 734, 735 [56 L. Ed. 1165]), said:

"A series of decisions in this court has settled that such hearings before executive officers may be made conclusive when fairly conducted. In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings, it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation, or that there was a manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final."

In the same opinion, at page 472 of 225 U. S., at page 737 of 33 Sup. Ct. (56 L. Ed. 1165), having under consideration the rules of the Department of Labor to be followed by its agents in deportation proceedings, the court said:

"Considering the summary character of the hearing provided by statute and the rights given to counsel in the rules prescribed, we are not prepared to say that the rules are so arbitrary and so manifestly intended to deprive the alien of a fair, though summary, hearing as to be beyond the power of the Secretary of Commerce and Labor under the authority of the statute."

The rules thus referred to are the ones substantially now in force and followed in the present case. Declarations of a similar character as to the power vested in the executive officers of the government and in the limitations placed upon the courts in attempting to review them, are made in Jem Yuen's Case (D. C.) 188 Fed. 350, and in Siniscalchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501, which seem to accord with the general current of the authorities.

The power to refuse aliens admission to our country or to expel them, as is indicated in the opinion of Judge Dooling, in Re Rhagat Singh (D. C.) 209 Fed. 700, at page 702, is a "vast" one, and one which it might well, perhaps, be argued ought not to be lodged definitely and conclusively in an executive department of the government; but, on the other hand, though questions juridical in their nature are presented, yet in the last analysis the ultimate question, viz., that of denial of entrance or expulsion, is purely political, and as such, together with all the incidents thereof, is properly determinable by the legislative branch of the government under such rules and regulations and through such administrative agencies as it may prescribe.

[3] Applying the law as thus enunciated to the facts of the case at bar, I can come to no other conclusion than that this court has no power in this or any other proceeding to set aside the judgment and order of the Department of Labor made herein. The procedure followed, as indicated by the papers used herein, shows that the rules laid down by the department were substantially adhered to. Full and fair opportunity was given the alien to show cause, if any he had, why he should not be deported. All the evidence used against him was exhibited to him, and apparently he made use of every means at his command to substantiate his claim that he was innocent of the charges made. No request was made by him for a continuance, or for further opportunity to obtain evidence in refutation of that adduced against him, and no claim made at the hearing that there was any other evidence which ought to be considered, and which he could present if given additional opportunity.

[4] There is nothing in the claim on his part that the evidence taken previous to the issuance of the warrant of arrest might not be used or relied upon by the Secretary of Labor in arriving at his final determination with respect to the propriety of deporting the alien. On principle, there is no reason why such evidence so taken and exhibited to the alien during the course of the hearing might not be used and relied upon as against him; in addition, subdivision 4 of rule 22 of the Immigration Department provides that counsel for the alien shall

be permitted "to offer evidence to meet any evidence *theretofore* or thereafter presented by the government." The "theretofore" refers in my judgment to evidence used in making the application for the warrant as well as to evidence received subsequently.

[5] The last question, and one upon which counsel seemed to contend with most emphasis, is as to whether there is any evidence in the record from which the alien's guilt upon the charges made against him could be deduced. It is unnecessary in this opinion to go into this evidence and sift and weigh the same. The alien admits in his own testimony that he was the owner of certain property in Fresno, that that property constituted 12 "cribs," that it was inhabited by prostitutes, that the alien knew and for some years had known that it was so inhabited by prostitutes, and that they were plying their nefarious trade therein; that it was rented to them directly by him, they paying him directly the money therefor and he providing all the accommodations therein; that he had charge of the rooms constituting the aforesaid "cribs." It is also apparent that there was no other intermediary, or other person directly, or at all, in charge of the women, the "cribs," or the business which they were conducting. Such conduct on his part shows him to have been "connected with the management of a house of prostitution," and within itself justifies his deportation. It clearly demonstrates that there was a closer relation between him and the women than that of mere landlord and tenant, as claimed by his counsel herein. In addition, there was ample evidence and other circumstances introduced tending to prove the truth of all the charges made against him, and to prove that he is and was one of the very individuals against whom the statute was intended to operate.

The writ of habeas corpus heretofore issued herein is dismissed, and the said alien is remanded for deportation.