## Ex parte BUN CHEW.

(District Court, S. D. California, S. D.   January 11, 1915.)

1. ALIENS ⬤═32—DEPORTATION—REVIEW BY COURTS.

The court on habeas corpus has no authority to set aside or invalidate an order of deportation, where the alien has been given a fair hearing by the departmental officials pursuant to its rules, and there has been no manifest abuse of discretion by such officials in arriving at the conclusion that the alien should be deported.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. ⬤═32.]

2. ALIENS ⬤═32—DEPORTATION—SUFFICIENCY OF EVIDENCE.

In a proceeding to deport a Chinese person, who claimed to have resided continuously in the United States for a number of years, and who was in possession of a certificate of residence, evidence *held* so wholly insufficient to show that he entered the United States in violation of law as to render the conclusion of immigration officials that he should be deported a manifest abuse of discretion.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. ⬤═32.]

3. ALIENS ⬤═32—DEPORTATION—COUNTRY TO WHICH ALIEN SHOULD BE DEPORTED.

Under Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (Comp. St. 1913, § 4269) § 20, providing that any alien entering the United States in violation of law shall be taken into custody and deported to the country whence he came at any time within three years after his entry, a Chinese person entering the United States from Mexico after being temporarily domiciled therein is properly deported to China, the country from which he originally came.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. ⬤═32.]

Habeas corpus proceeding by Bun Chew.   Petitioner discharged.

Frank Stewart, of Los Angeles, Cal., for petitioner.

Albert Schoonover, U. S. Atty., and H. R. Archbald, Asst. U. S. Atty., of Los Angeles, Cal., for respondents.

BLEDSOE, District Judge.   This is a proceeding in habeas corpus to test the validity of an order of deportation issued by the Secretary of Labor, and directing that the petitioner herein be deported to China, the country whence he came originally, because of the fact that said petitioner is unlawfully within the United States, in that he entered in violation of section 36 of the Immigration Act, "thereby entering without inspection."

It is the fact that the petitioner is a subject of China, and not a citizen of the United States; and it is also the fact that at the time of his arrest he was in possession of the certificate required by law to be possessed by Chinese laborers.   I have had occasion lately to consider the jurisdiction and functions of the District Court of the United States on habeas corpus in deportation proceedings such as this, and my views and conclusions with respect to the function of the court in the premises are set forth at some length in an opinion lately filed by me in the Matter of Iwata, 219 Fed. 610.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] As therein suggested, this court, under the law, has no authority to set aside or invalidate an order of deportation, where the alien has been given a fair hearing by the departmental officials, pursuant to its rules in such cases made and provided, and where there has been no manifest abuse of discretion by such departmental officers in arriving at the conclusion that the alien in question should be deported. Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165.

[2] Indulging in every intendment in favor of the validity of the order involved herein, I can come to no other conclusion than that the immigration officers were guilty of a manifest abuse of discretion in concluding, upon the evidence adduced before them and incorporated into the record herein, that the alien had entered the United States in violation of section 36 of the Immigration Act.

The evidence shows without any question or claim of doubt that the alien first came to this country a good many years ago, and that when arrested he was possessed of a certificate of residence dated in 1894. By his own admission he made a short visit to China about 14 or 15 years ago, which would be about 1900. His evidence and that of others in corroboration thereof was to the effect that he had resided since that time in and about Hanford and Visalia, in this state, and that he had at no time departed from the United States during this last-mentioned period; that at the suggestion of his brother, about the beginning of this year, he had gone down to Phœnix, Ariz., had remained there some few days, and thereafter journeyed on foot to Tucson, Ariz., at which place he entered a freight car, and some time thereafter (the precise time not being shown by the record, but presumably a short time prior to the inception of the deportation proceeding) he was discovered in the freight car and removed therefrom.

There is nowhere in the entire proceeding any evidence which squints at the discovery or observation of the alien at any place along or close to the border of the United States. There is no testimony of any sort coming from any person that he crossed such border into the United States. The only feature or fact in the record which may be said to offer the slightest suggestion that the alien, having at one time been in a foreign country, to wit, Mexico, must therefore perforce have subsequently entered the United States, centers about two statements incorporated into the record, purporting to come from two more or less distinguished citizens of the republic of Mexico. These statements, apparently signed, although not sworn to, and dated the latter part of March, 1914, affirm on the honor of their respective makers substantially that said citizens were well acquainted with a certain individual, whose name was to them unknown, but who they aver was the identical individual whose photograph was shown to them, which photograph bore upon the back thereof the words "Bun Chew," the name of the petitioner herein; that the aforesaid individual lived in Agua Prieta, Mexico, "for about two years, and until about three years ago, engaged in a Chinese restaurant."

There is no evidence in the case serving in any form or fashion to identify Bun Chew, the petitioner herein, as the man whose photograph was shown to these citizens of Mexico, and no evidence or cir-

cumstances from which it could be inferred that, even if the photograph of the individual thus exhibited was that of a "Bun Chew," such individual was the same Bun Chew as is now by the Department of Labor sought to be deported to China. It is common knowledge that many different Chinese are known by the very same name; therefore, in my judgment, there can be in an instance of this sort no presumption of identity of person because of identity of name. So, also, as above suggested, the fact that the record fails to disclose or even give a hint that this was in truth a photograph of the alien here in question takes from the statements of the individuals mentioned whatever force such statements were probably intended to carry, and all the probative force which would, under proper circumstances, be accorded to them by the court.

Unless it can be said that the orders of the department of Labor in deportation proceedings, apparently acting within the scope of their authority, are to be held conclusive and impregnable to attack in a proceeding of this sort, irrespective of the want and absence of evidence and facts tending to support the conclusions reached by the Department, this petitioner herein should be awarded his liberty, and absolved, not only from the stigma placed upon him, but also from the unjust interference with his freedom of action.

True it is that there are some evasions, and perhaps contradictions, in the testimony of the alien and of those called in his behalf; but these become of no consequence in the face of a total failure of proof with respect to the sole unlawful act charged against him.

[3] Complaint is also made in that he was ordered deported to China, the country whence he came originally; the contention being that, under the claim of the government that he came to the United States last from Mexico, in the event of his deportation at all he should be deported to that country, that being the country "whence he came." Section 20 of the Immigration Act. With respect to this, however, it is clear to me that the phrase above quoted refers to the country from which the alien originally came, and not to some other country from which, he being temporarily domiciled therein, he came immediately to the United States.

The warrant of deportation in this case being in excess of the jurisdiction of the Department of Labor, it is insufficient authority whereby to detain or deport the alien in question, and he is therefore entitled at this time to his discharge from such custody and detention.

It is so ordered.