Ex parte PSIMOULES.

(District Court, S. D. California, S. D.   March 26, 1915.)

1. ALIENS ⊚⇒54—DEPORTATION—SUFFICIENCY OF EVIDENCE.

    In determining the sufficiency of the evidence to warrant the deportation of an alien, the evidence taken prior to, and used as the basis of the issuance of, the warrant of arrest, can be considered.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⊚⇒54.]

2. ALIENS ⊚⇒51 — DEPORTATION — ALIENS SUBJECT TO DEPORTATION — "INMATE."

    A "mack," or pimp, residing continuously in a house of prostitution, is an "inmate" thereof, within Act March 26, 1910, c. 128, 36 Stat. 263, providing for the deportation of any alien who shall be found an inmate of, or connected with the management of, a house of prostitution, as an "inmate" is one who is a mate or associate in the occupancy of a place, an associated lodger, or inhabitant; and such a person is not in the same position as a jailer, who, though living in a jail, would not be an inmate thereof, especially as Act Feb. 20, 1907, c. 1134, 34 Stat. 898, which was amended by the Act of 1910, applied only to any alien woman or girl, while the words "woman or girl" are omitted from the act of 1910.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 111; Dec. Dig. ⊚⇒51.

    For other definitions, see Words and Phrases, First and Second Series, Inmate.]

3. ALIENS ⊚⇒51—DEPORTATION—ALIENS SUBJECT TO DEPORTATION.

    A man who assumed to dictate the terms of a sale of an interest in the business carried on in a house of prostitution, endeavored to secure a prostitute to work for him there, and had a telephone there in his name and rented by him, through which much of the business of the house was transacted, was connected with the management of the house, within Act March 26, 1910.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 111; Dec. Dig. ⊚⇒51.]

Application by George Psimoules for a writ of habeas corpus. Writ discharged, and petitioner remanded.

Ford & Hammon, of Los Angeles, Cal., for petitioner.

Albert Schoonover, U. S. Atty., and Harry R. Archbald, Asst. U. S. Atty., both of Los Angeles, Cal., for respondents.

BLEDSOE, District Judge.   This petitioner, who is a citizen of Greece, has been ordered deported by the Department of Labor, after due hearing by the immigration officers of said department, because "he has been found an inmate of, and connected with the management of, a house of prostitution, subsequent to his entry in the United States."

[1] The claim is made that the evidence which was taken prior to, and which was used as the basis of the issuance of, the warrant of arrest cannot be considered in determining the question of the sufficiency of the evidence to warrant deportation; that, excluding that evidence, there is nothing in the record to establish any material fact necessary to support the order of deportation; and, specifically, that there is nothing to show that the petitioner, at or prior to his arrest,

was either an inmate of, or connected with the management of, a house of prostitution.

This court, in the Case of Hidekuni Iwata (No. 80, Criminal Southern Division) 219 Fed. 610, has had occasion to go into the scope and character of the proceedings which must be had to justify an order of deportation. Its conclusions were stated therein with definiteness, and need not be here repeated. It was therein decided that the first point made herein by the petitioner was not tenable.

In this case numerous witnesses were examined, and there is ample evidence to justify the finding of the Secretary of Labor. The testimony showed that for some considerable period, at least a couple of years, certain premises in Los Angeles were reputed to be a house of prostitution; the "landlady" of this house was a certain woman named Mabel Thompson; the defendant lived in this house with her, occupying the same room and bed; numerous other prostitutes also lived in and about, and plied their trade in, the premises; it was generally reputed in the vicinity that the defendant was the "mack," or pimp, of the Thompson woman; the house was rented in her name, but the telephone to the house, which was in the principal room used for "soliciting," etc., was in his name, and he paid the rental therefor; a certain woman, who wanted to buy a half interest in the place, was told to go to him, which she did; and he offered to effect a sale of a half interest in the business to her. On one occasion he asked a prostitute to come and "work" one Sunday for him at the house. When the woman Thompson bought a half interest in the place from another prostitute, who owned it in partnership with her, the petitioner furnished the money for this transaction. There was also some evidence to the effect that he had a mortgage on the furniture in the place, and for some months, at least, paid the rent to the landlord. Of course, much of this evidence is controverted by the testimony given by the petitioner; but that does not establish a want of its verity. On the contrary, the fact of his denial, for instance, that he knew that the house was a house of prostitution, or that the woman Thompson was a prostitute, doubtless in itself caused the departmental officials in the immigration service to conclude that all of his testimony was given recklessly, and that no reliance or credence should be accorded to it.

[2] The argument is advanced that the finding in the order of deportation that the petitioner was an inmate of a house of prostitution is entirely unsupported, in that the claim is made that it is impossible for a man to be an "inmate" of a house of prostitution; that the statute evidently refers to women, and that it is an obvious contradiction in terms to accuse or convict a male person of being an inmate of such a house; that the word "inmate," as used in the statute, "signifies a female who is an occupant of a house with the intention on her part to follow the occupation for which the house is maintained." In support of this contention considerable argument of a learned nature is indulged in to demonstrate the philological unsoundness of the contention that a man can be an "inmate" of such a place. In this connection it is said that obviously the "inmate" of a jail, or a

poorhouse, or a lunatic asylum, could not possibly be held to comprehend the jailer, or the superintendent, or other directive head of such institution, even though such person might be living within the place and wholly an occupant thereof. In my judgment, however, the statute itself refers equally to males as well as to females, in inhibiting against residence in a house of prostitution on the part of aliens, and I am also constrained to hold that a fair use of language would properly classify a "mack," or a pimp, residing continuously in a house of prostitution, as an inmate thereof, along with the others therein.

Act Feb. 20, 1907, c. 1134, 34 Stat. 898, contained the provision that:

"Any alien *woman or girl* who shall be found an inmate of a house of prostitution or practicing prostitution, * * * within three years after she shall have entered the United States, shall be deemed to be unlawfully within the United States and shall be deported as provided by sections 20 and 21 of this act."

After some administration of this law, its inefficacy was made apparent, and by Act March 26, 1910, 36 Stat. 263, it was amended to read as follows:

"Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, * * * shall be deemed to be unlawfully within the United States," etc. (Italics are mine.)

It is apparent from a comparison of the two statutes that Congress, ex industria, eliminated that portion of the statute which confined its operation to an alien "woman or girl" and made it apply, without limitation or qualification, to "any alien." In my judgment, the obvious intention of Congress in thus amending and strengthening the law was to make it apply to men as well as to women, and therefore to make it possible for men as well as women to be classed, if the occasion should demand it, as "inmates" of houses of prostitution. The court should not, in my opinion, be astute to construe the law so as to nullify its beneficent aims and purposes. "Inmate," as defined in the Century Dictionary, is:

"One who is a mate or associate in the occupancy of a place; an associated lodger or inhabitant."

Under this definition, it would easily be true that the jailer, living in a jail, would not be the "mate" or "associate" of other occupants of the place, and hence not an "inmate"; but, by the same token, it would require no stretch of language to say that a man situated as the petitioner was, with respect to the premises in question, was such an "associate," or "associated lodger," as that he would properly fall within the terms of the definition of the word as thus given by standard authority.

[3] So, also, there is ample evidence in the record, as indicated hereinabove, to sustain the finding that the petitioner was "connected" with the management of the house in question. The statute does not attempt to define the extent to which an alien must be "connected" with such management, in order that he may be placed under the ban

of the Immigration Law. Giving full meaning to the terms employed, it is sufficient if it be shown that such alien is "connected" in any degree or capacity with such management. In other words, if he assumes at all, knowingly, any of the responsibilities for the carrying on or conduct of the inhibited business, he may then be said to be "connected" with its management. That the petitioner, in assuming to dictate terms as to a sale of a half interest in the business, in endeavoring to secure a prostitute to "work" at her trade, in paying the rent of the house for a time, and in having the telephone in the house, through which much of its business was transacted, in his name, and rented by him, was thereby "connected with the management" of a house of prostitution, is amply demonstrated.

The writ of habeas corpus is discharged, and the petitioner is remanded for deportation.