## AKIRA ONO v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   September 7, 1920.)

No. 3451.

1. Aliens ⬤⟿54—Specification of immaterial statute in Secretary of Labor's deportation order immaterial.

Where the order of the Acting Secretary of Labor, directing the arrest of a Japanese person and that he be granted a hearing, to show cause why he should not be deported, recited that he had entered the United States in violation of Act Feb. 5, 1917, such recital was immaterial, though the entry occurred before the passage of the act; the question for determination in the deportation proceedings being whether the alien was lawfully in the United States and whether there existed any authority for his deportation.

2. Aliens ⬤⟿39—Congress may restrict immigration.

Congress by statute may forbid aliens from coming into the United States, and may provide for their expulsion, devolving upon the executive department or its subordinate officers the duty of carrying out the law.

3. Aliens ⬤⟿54—Action of executive department under deportation statute final when proceeding is fairly conducted.

The action of the executive department or its subordinate officers under deportation statutes is final, when hearings are fairly conducted.

**4. Evidence ⬠11—Judicial notice taken of historical events.**

Courts will take judicial notice of history, such as the protest of the Japanese government against the proclamation of President Roosevelt specifically reciting that passports issued to Japanese laborers were being used for the purpose of enabling the holders to enter the continental territory of the United States, as well as the subsequent so-called "gentlemen's agreement."

**5. Aliens ⬠46—Japanese laborer not entitled to admission.**

Under Act Feb. 20, 1907, providing that, when the president shall be satisfied that passports issued by any foreign government to its citizens to go to other countries are being used for the purpose of enabling the holders to come into the continental territory of the United States, the President may refuse to permit such citizens to enter the continental territory of the United States, as well as the proclamation of President Roosevelt superseded by the so-called "gentlemen's agreement" between the United States and Japan and the proclamation of President Taft, a Japanese laborer is not entitled to enter the continental United States, even though he left Japan without passport.

**6. Aliens ⬠53—Japanese laborer, who entered United States without passport, may be deported within five years.**

Under Act Feb. 5, 1917, a Japanese laborer, who entered the United States surreptitiously without passport, deserting a vessel on which he was a coal passer, may, his entry being unlawful under Act Feb. 5, 1917, and the presidential proclamations, be deported five years thereafter.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Petition by Akira Ono for a writ of habeas corpus to obtain release from custody in deportation proceedings by the United States. From a judgment denying relief, petitioner appeals. Affirmed.

J. Marion Wright, of Los Angeles, Cal., for appellant.

Robert O'Connor, U. S. Atty., and W. F. Palmer, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The appellant petitioned the court below for a writ of habeas corpus to inquire into his alleged illegal imprisonment, after hearing which matter the court dismissed the writ and remanded the petitioner to the custody of the Immigration Department of the government, for deportation. The record of the proceedings of the government against him were made a part of the petition, and it shows, among other things, the appellant to be a native and subject of the empire of Japan and an unskilled laborer, and that he left that country December 30, 1914, via England, arriving at Galveston, Tex., by ship on which he was a coal passer, about March 1, 1915, and there deserted the ship and unlawfully entered the United States, where he has remained ever since. In his testimony he admitted that he had no passport of any kind at the time of leaving Japan. At the time of his arrest five years had not elapsed, but more than three years had since his entry into this country.

[1] The record shows that the order of the Acting Secretary of Labor, directing the arrest of the appellant, and that he be granted a

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

hearing to enable him to show cause why he should not be deported in conformity with law, recited that evidence had been submitted to that official from which it appeared that the said alien had been found in the United States—

"in violation of the Immigration Act of February 5, 1917, for the following, among other, reasons: That he entered and is within the United States in violation of the sixth proviso of section 3 of the above-mentioned act (rule 11)."

That proviso reads as follows:

"That whenever the President shall be satisfied that passports issued by any foreign government to its citizens or subjects to go to any country other than the United States, or to any insular possession of the United States or to the Canal Zone, are being used for the purpose of enabling the holder to come to the continental territory of the United States to the detriment of labor conditions therein, the President shall refuse to permit such citizens or subjects of the country issuing such passports to enter the continental territory of the United States from such other country or from such insular possession or from the Canal Zone." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b.

The mention of that clause of the statute of February 5, 1917, by the Assistant Secretary, we regard as unimportant, not only because it was so mentioned as one only of the reasons for his action, but mainly for the reason that the real question is whether the case shows that the appellant was found illegally here, and, if so, whether there exists any legal authority for his deportation. · It is not pretended that he was not afforded a full and fair hearing upon those questions by the immigration officers. See Guiney v. Bonham (C. C. A.) 261 Fed. 582, 584, and cases there cited.

[2, 3] It is well-settled law that Congress by statute may forbid aliens from coming into the United States, and may provide for their expulsion, devolving upon the executive department, or its subordinate officers, the right and duty of carrying out the law, and that the action of that department, within the authority of the statute, is final, provided its proceedings are fairly conducted. Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165, and cases there cited.

[4, 5] It only remains to consider, therefore, whether the entry of the appellant into the United States was unlawful, and, if so, whether there was any statutory authority for his expulsion. That he deserted his ship, had no passport from his own country, and smuggled himself into this, was practically admitted by himself. The last proviso of section 1 of Act Feb. 20, 1907, entitled "An act to regulate the immigration of aliens into the United States" (34 Stats. 898, c. 1134), reads:

"Provided further, that whenever the President shall be satisfied that passports issued by any foreign government to its citizens to go to any country other than the United States or to any insular possession of the United States or to the Canal Zone are being used for the purpose of enabling the holders to come to the continental territory of the United States to the detriment of labor conditions therein, the President may refuse to permit such citizens of the country issuing such passports to enter the continental territory of the United States from such other country or from such insular possessions or from the Canal Zone."

Under and in pursuance of the last-mentioned act of Congress the President, on the 14th day of March, 1907, issued this proclamation:

"Whereas, by the act entitled 'An act to regulate the immigration of aliens into the United States,' approved February 20, 1907, whenever the President is satisfied that passports issued by any foreign government to its citizens to go to any country other than the United States or to any insular possession of the United States or to the Canal Zone, are being used for the purpose of enabling the holders to come to the continental territory of the United States to the detriment of labor conditions therein, it is made the duty of the President to refuse to permit such citizens of the country issuing such passports to enter the continental territory of the United States from such country or from such insular possession or from the Canal Zone;

"And whereas, upon sufficient evidence produced before me by the Department of Commerce and Labor, I am satisfied that passports issued by the government of Japan to citizens of that country or Korea and who are laborers, skilled or unskilled, to go to Mexico, to Canada, and to Hawaii, are being used for the purpose of enabling the holders thereof to come to the continental territory of the United States to the detriment of labor conditions therein:

"I hereby order that such citizens of Japan or Korea, to wit, Japanese or Korean laborers, skilled and unskilled, who have received passports to go to Mexico, Canada, or Hawaii, and come therefrom, be refused permission to enter the continental territory of the United States.

"It is further ordered that the Secretary of Commerce and Labor be, and he hereby is, directed to take, through the Bureau of Immigration and Naturalization, such measures and to make and enforce such rules and regulations as may be necessary to carry this order into effect."

Courts take judicial notice of the history of the country, and consequently this court knows what is known to every well-informed person, that the Japanese government made objection to the language employed in the foregoing proclamation of President Roosevelt of March 14, 1907, resulting in what is commonly known as the "gentlemen's agreement" between the two countries, by which the government of Japan agreed to issue no more passports to its laborers under which they might enter the continental portion of the United States, and in this modified proclamation by President Taft, issued February 24, 1913:

"Whereas, by the act entitled 'An act to regulate the immigration of aliens into the United States,' approved February 20, 1907, whenever the President is satisfied that passports issued by any foreign government to its citizens to go to any country other than the United States or to any insular possession of the United States or to the Canal Zone, are being used for the purpose of enabling the holders to come to the continental territory of the United States to the detriment of labor conditions therein, it is made the duty of the President to refuse to permit such citizens of the country issuing such passports to enter the continental territory of the United States from such country or from such insular possession or from the Canal Zone;

"And whereas, upon sufficient evidence produced before me by the Department of Commerce and Labor, I am satisfied that passports issued by certain foreign governments to their citizens or subjects who are laborers, skilled or unskilled, to proceed to countries or places other than the continental territory of the United States are being used for the purpose of enabling the holders thereof to come to the continental territory of the United States to the detriment of labor conditions therein;

"I hereby order that such alien laborers, skilled or unskilled, be refused permission to enter the continental territory of the United States.

"It is further ordered that the Secretary of Commerce and Labor be, and

he hereby is, directed to take, through the Bureau of Immigration and Naturalization, such measures and to make and enforce such rules and regulations as may be necessary to carry this order into effect."

It is obvious, therefore, that even if the appellant had arrived at Galveston with a passport from his government and had sought by reason thereof entry into this country, the immigration officials at Galveston would have, as in duty bound, denied him admission; a fortiori, his surreptitious entry into the United States was clearly unlawful.

[6] Belonging, as the appellant clearly did, to a class, to wit, that of unskilled laborers, denied the right of entry into the United States by virtue of the Act of February 20, 1907, and the presidential proclamations promulgated under and pursuant thereto that have been set out, he was by the express provision of section 19 of the Act of February 5, 1917 (39 Stat. 874, 889 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]), subject to deportation at any time within five years from the time of his entry. Section 23 of the same act required the Commissioner General of Immigration under the direction of the Secretary of Labor, to prescribe suitable rules and regulations for carrying out the provisions of the act, by virtue of which authority certain rules and regulations were made and adopted by the executive department for, among other things, the deportation within five years of any alien who entered the continental territory of the United States prior to May 1, 1917, and who was at the time of such entry a member of any one of the classes denied admission thereto by virtue of any provision of the above-mentioned Act of February 20, 1907 (rules 11 and 13).

It may be added that the sixth proviso of section 3 of the Act of February 5, 1917, referred to in the order of arrest issued by the Acting Secretary of Labor is, as will be readily seen, substantially and almost literally the same as the last proviso of the Act of February 20, 1907.

The judgment is affirmed.