**NAKAZO MATSUDA et ux. v. BURNETT,**
**District Director of Immigration.**
**No. 7268.**

Circuit Court of Appeals, Ninth Circuit.
Dec. 22, 1933.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellants.

Peirson M. Hall, U. S. Atty., and P. V. Davis, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from an order of the District Court denying petition of appellants for writ of habeas corpus.

Nakazo Matsuda and his wife, Risa Matsuda, natives of Japan, entered the Hawaiian Islands in 1889 and 1893, respectively, and lived there until July of 1929, with the exception of one visit to Japan in 1916 extend-

ing for a period of about seven months. In 1928 they made application to the district director of immigration at Honolulu for permission to proceed to continental . United States for permanent residence, having a son, a native of Hawaii, living in Southern California. This was denied them, but permission was granted for a temporary stay of six months on the mainland, bonds were given, and the old couple arrived in California in the latter part of July, 1929. They overstayed their leave, were arrested on March 26, 1931. After hearing, they were extended the privilege of departing voluntarily for Hawaii, with the proviso that, unless they so departed, an order of deportation for return to Japan would be entered. They declined to avail themselves of this privilege, and warrant of deportation issued. When arrested, Nakazo was working at the son's house, near Torrance, Cal., and the wife, Risa, was picking strawberries in a patch some distance away.

It might be well to here mention that Hawaii, at the time of the first entry of these two people, was an independent nation. Further, they left Honolulu in April of 1916 for Japan and returned to Hawaii about December 1, 1916, bearing passports of the Japanese government reciting that they were the subjects of the Emperor of Japan domiciled at Hiroshima-Ken, Japan, proceeding to Hawaii.

Appellants contend that, inasmuch as the territory of Hawaii is a part of the United States, the immigration officers have no authority to restrict their residence to Hawaii, rather than any part of the United States proper; that, by the Act of 1924 (see 8 US CA § 224), the territory of Hawaii was specifically made a part of the United States under the immigration laws; that the legislation as to aliens cannot affect them because they were residents of Hawaii before the United States took over the islands; that the warrant of deportation is of no force, in that it sets forth that they entered the United States in violation of rule 7 (now rule 8) of the Immigration Rules, while in fact they entered under permission of the authorities, and there is no law under which they may be deported. Further, it is urged that, if appellants are deported, they should be deported to Hawaii instead of Japan.

In Akira Ono v. U. S., 267 F. 359, this court reviewed the Presidential Proclamations of March 14, 1907 and of February 24, 1913, authorized by the Act of February 20, 1907 (34 Stat. 898) entitled "An Act To regulate the immigration of aliens into the United States." The presidential proclamation of 1907 contained the words, "I hereby order that such citizens of Japan or Korea, to wit, Japanese or Korean laborers, skilled or unskilled, who have received passports to go to Mexico, Canada or Hawaii, and come therefrom, be refused permission to enter the continental territory of the United States," and met with such strenuous objections from the Japanese government that, in 1913, another presidential proclamation was issued eliminating any reference by name to any government, territory, or possession, leaving the latter proclamation to read in part as follows:

"Whereas, upon sufficient evidence produced before me by the Department of Commerce and Labor, I am satisfied that passports issued by certain foreign governments to their citizens or subjects who are laborers, skilled or unskilled to proceed to countries or places other than the continental territory of the United States are being used for the purpose of enabling the holders thereof to come to the continental territory of the United States to the detriment of labor conditions therein:

"I hereby order that such alien laborers, skilled or unskilled, be refused permission to enter the continental territory of the United States."

The proclamation of 1913 referred to the same subject-matter as that of 1907 and had the same effect.

 It is true that the territory of Hawaii is a part of the United States, but it is also an insular possession. Healy v. Backus (C. C. A.) 221 F. 358, 363. However, appellants insist that the Immigration Act of 1924 (see 8 USCA § 224), in defining the United States, by its language included the states, the territories of Alaska and Hawaii, etc., and hence these aliens are not immigrants, but persons lawfully within the United States. This point was decided adversely to appellants' contention by this court in Kaichiro Sugimoto v. Nagle, 38 F.(2d) 207.

It is also urged that, as appellants were residents of Hawaii before the islands were taken over by the United States, no subsequent legislation can affect the status created by their lawful entry into the islands; the contention being that they do not come within the presidential proclamation of 1913, that their entry into Hawaii was unlimited in all respects, and that they cannot be deported on the ground that their place of abode was limited to Hawaii. It is undisputed that in 1916 the Matsudas made a trip to Japan and their passports on their return limited their residence to Hawaii. This entry was made

after the presidential proclamation of 1913 was in force, and necessarily this was controlling, since in the case of aliens the law existing at the time of the last entry prevails. Judge Rudkin in Bendel v. Nagle, etc. (C. C. A.) 17 F.(2d) 719, 720, 57 A. L. R. 1129, said: "An alien who voluntarily leaves this country is subject to all the provisions of the Immigration Act whenever he seeks to return. Lapina v. Williams, 232 U. S. 78, 34 S. Ct. 196, 58 L. Ed. 515; Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967." See, also, Cahan v. Carr (C. C. A.) 47 F.(2d) 604.

▉ Rule 7 (now rule 8) of the Immigration Rules sets forth in subdivision A thereof the Presidential Proclamation of February 24, 1913, and subdivision B states, in substance, that laborers presenting limited labor passports are entitled to admission only to countries or places other than *continental* United States, and shall be forbidden to enter continental United States. The warrant in this case ordered deportation on the ground that the aliens were found in the United States in violation of the Immigration Act of February 5, 1917 (39 Stat. 874), in "That they entered in violation of Rule 7 (now Rule 8) of the immigration rules. * * *" The inspector who conducted the examination referred to the proclamation of 1907 in his findings, and this is asserted to be error by the appellants. The mistake of the inspector is of no consequence, as he does not make the decision; it is the board which makes the final order, and the board referred only to the act of 1917 and rule 7 (now rule 8) of the Immigration Rules. In this regard the important matter was whether the aliens had a fair hearing and were sufficiently acquainted with the nature of the proceeding and its effect. This is apparent from the record. They had the advice of counsel; they knew that their visit to the United States was to have been but a temporary one of six months, and that they had overstayed the period granted. They knew that they were charged with being here in violation of law; they were given a fair hearing, and that is sufficient. See Kostenowczyk v. Nagle (C. C. A.) 18 F.(2d) 834; Weedin v. Mon Hin (C. C. A.) 4 F.(2d) 533, 534. As supporting their contention, appellants cite Mahler v. Eby, 264 U. S. 32, 42, 44, 44 S. Ct. 283, 68 L. Ed. 549. In that case there was no express finding that the alien was an undesirable resident, and the warrant of deportation was silent on that point. By statute, a finding of undesirability is made a condition precedent to deportation, and the Supreme Court held that it was essential that this should appear of record. But in this case petitioners

were not discharged for the defect in the warrant; they were held pending correction of the document.

In the case of Kaichiro Sugimoto v. Nagle (C. C. A.) 38 F.(2d) 207, the appellant was a native of Japan who had been lawfully admitted to Hawaii in 1907 on a limited passport. Almost immediately he left Hawaii and was smuggled into the United States at the port of San Francisco. At the time, he was a laborer, entitled to admission to Hawaii, but not continental United States under the presidential proclamation of that year. From 1907 to 1923 he remained in the United States, married, and was the father of two American-born children. He was the proprietor of a restaurant, literate, and in good health. He took a voyage to Japan, and on his return to San Francisco was denied admission on the ground that his first entry into continental United States had been unlawful, and that he could not lawfully re-enter the United States notwithstanding his long residence here, nor the fact that had he continuously remained here the running of the statute of limitations in his favor would have precluded his deportation. Sugimoto contended that his first entry to continental United States was lawful because his entry into Honolulu had been lawful. It was likewise urged that the presidential proclamation had no application because by amendments to immigration laws the Hawaiian Islands were made a part of the United States. These contentions were held untenable.

It might be well to note that the above case affirmed the decision of the lower court, Ex parte Kaichiro Sugimoto, 33 F.(2d) 926, 928, wherein it is held, among other things, that "A Japanese laborer, although lawfully admitted to Hawaii, is still barred from entry to the mainland." The same conclusion is stressed in Re Rhagat Singh et al. (D. C.) 209 F. 700, 703.

The Supreme Court in Yamataya v. Fisher, 189 U. S. 86, 97, 23 S. Ct. 611, 613, 47 L. Ed. 721, said: "That Congress may exclude aliens of a particular race from the United States; prescribe the terms and conditions upon which certain classes of aliens may come to this country; establish regulations for sending out of the country such aliens as come here in violation of law; and commit the enforcement of such provisions, conditions, and regulations exclusively to executive officers, without judicial intervention,—are principles firmly established by the decisions of this court." See, also, U. S. v. Sui Joy (C. C. A.) 240 F. 392, 394.

In 1916, after an absence of approximately seven months, the appellants presented themselves for admission on passports limited to Hawaii. Their admission was subject to that condition; they may not now assert that this limited admission of 1916 can be disregarded or extended to permit entry and residence in continental United States.

██ The admission of any alien to the United States is subject to whatever condition the government sees fit to impose; "the right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, being an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare." Fong Yue Ting v. U. S., 149 U. S. 711, 13 S. Ct. 1016, 1021, 37 L. Ed. 905.

██ The argument that while the Department of Labor *might* have had the right to *exclude* these people from the mainland, now that they are here it is without power to deport them, is sufficiently answered by the warrant of deportation, which recites that these aliens have been found in the United States in violation of the Immigration Act of 1917. One who has entered lawfully may remain unlawfully. Ng Fung Ho v. White, 259 U. S. 276, 281, 42 S. Ct. 492, 66 L. Ed. 938. In Ewing Yuen v. Johnson (D. C.) 299 F. 605, 606, it was said: "He applied for and obtained temporary admission under the immigration laws as an alien otherwise inadmissible. He entered into a solemn obligation with the authorities representing the United States government to depart within six months. At the expiration of that period his stay within the United States was unlawful. He would come within those provisions of section 19 of the above-cited Immigration Act [8 USCA § 155], which provides that: 'Any alien * * * who shall be found in the United States in violation of this Act, or in violation of any other law of the United States; * * *

shall, upon the warrant of the Secretary of Labor, be taken into custody and deported.'"

██ It is earnestly urged by counsel for appellants that in any event the deportation of these aliens to Japan rather than Hawaii, which had been their home for nearly half a century, was a grave injustice which this court should correct. There is no question but that aliens may be deported either to the country from whence they came or to the place of their nativity. 8 USCA § 156; U. S. ex rel. Fitleberg v. McCandless (C. C. A.) 47 F.(2d) 683, 684; Johnson v. Weedin (C. C. A.) 16 F.(2d) 105, 106. However, we reserve opinion as to whether or not aliens may be deported from continental United States to an insular possession of the United States.

██ On March 26, 1931, the appellants were taken into custody under the warrant of arrest and a hearing was accorded them, during the course of which they were represented by counsel. On September 26, 1931, after a consideration of the record presented, the Department entered the following order:

"* * * Although Nakazo Matsuda and his wife Risa Matsuda are deportable, in view of exceptional circumstances, the department has concluded not to enter an order of deportation at this time, but has directed that the aliens be informed that they may depart voluntarily from continental United States to Hawaii, upon consent of surety, on or before October 22, 1931, and that unless they do so depart, an order of deportation for return to Japan will be entered and deportation effected. * * *"

Appellants declined to accept the privilege of voluntary departure, and an assistant to the Secretary of Labor issued his warrant directing the deportation of the appellants to Japan.

We cannot hold that the action of the Secretary was an abuse of discretion.

The order appealed from is affirmed.