**Petition of DE LEO.**
**Petition No. 141115.**

District Court, W. D. Pennsylvania.
Jan. 7, 1948.

Richard I. Nassau, of Pittsburgh, Pa., for petitioner.

Hyman Scher, of Pittsburgh, Pa., for Immigration and Naturalization Service.

GOURLEY, District Judge.

The petitioner, Angelo DeLeo, filed Petition, for Naturalization No. 141115 in the United States District Court for the Western District of Pennsylvania on May 18, 1943.

The matter was originally fixed for hearing on January 17, 1947, at which time a continuance was requested in order that the petitioner could secure legal counsel. The continuance was granted, and a hearing was held on the 16th day of April, 1947. The Immigration and Naturalization Bureau recommended that citizenship be denied for the reason that the petitioner failed to establish that he was a person of good moral character during the period required by law. The recommendation for the denial of citizenship was based on the fact that the petitioner had failed and neglected to properly provide for the support of his minor child. That an order of court had been entered against the petitioner on the 23rd day of January, 1934, by the Municipal Court in the City of Philadelphia, Pennsylvania, wherein petitioner, Angelo DeLeo, was directed to pay the amount of four dollars ($4) per week for the support of said minor child. In addition thereto, it is contended that the petitioner had made a false statement in his petition for naturalization when he failed and neglected to set forth therein that he had been arrested or charged with violation of the law of the Commonwealth of Pennsylvania which relates to the failure to support or provide for a minor child.

At the time of said hearing the petitioner stated that he had made provision for his daughter, Ruth, who was born on November 25, 1921, and that no failure or neglect on his part had existed. In connection with the failure to set forth the proceeding which was filed against the petitioner for the support of his child, it was explained that the petitioner did not believe an action of that nature to be a criminal offense.

898

It appears that during the year 1930 the petitioner and his wife experienced domestic differences and, as a result thereof, a separation ensued. On January 23, 1934, an order of court was entered against the petitioner for the support of his daughter, Ruth, who was then twelve years of age. A delinquency existed and on the 20th day of August, 1936, the petitioner was committed to jail for thirty days for failure to comply with said court order. On the same date the amount of fifty dollars ($50) was paid and petitioner was discharged from jail. On April 21, 1937, petitioner was again cited for failure to comply with said court order, and on April 23, 1937 on payment being made of the amount of twenty dollars ($20) and costs, he was again discharged from jail.

At the time of the hearing on April 16, 1947, the representatives of the Immigration and Naturalization Bureau were of the opinion that the court order hereinbefore referred to was still in existence, and that the petitioner had failed to comply therewith. As a result thereof, the Court continued the hearing and requested the Bureau to ascertain the status of said court order. It was called to the attention of the Court on June 11, 1947 that on the 26th day of May, 1944, the order originally entered against the petitioner on the 23rd day of January, 1934 was vacated and any arrears which existed were remitted. As a result thereof no proceeding was pending against the petitioner at the time of hearing, and the contention that the petitioner was not of good moral character automatically ceased to exist for that reason.

The Act of Assembly in the Commonwealth of Pennsylvania which relates to the support of a child, 18 P.S. § 4733, is not a criminal statute, but would fall within the category of a quasi criminal proceeding. The only circumstances under which an individual can be indicted for a criminal offense is where the Commonwealth is able to prove and establish that the individual concerned willfully failed and neglected to comply with the court order which had been entered against him. In this case no such proceeding was filed against the petitioner and, as a matter of law, he could not be considered as having been guilty of a crime in this Commonwealth.

I, therefore, believe that the petitioner has explained his neglect to set forth in his petition for naturalization that he had not been arrested or charged with violation of any law of the United States or state, or any city ordinance or traffic regulation.

The Nationality Act of 1940, 8 U.S.C.A. § 501 et seq., its supplements and amendments, provides, inter alia, that no person shall be granted citizenship unless for at least five years prior to the date that the petition for naturalization is filed said individual was a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States. 8 U.S.C.A. § 707(a).

The petition for naturalization was filed on May 18, 1943, and the last difficulty experienced by the petitioner in connection with said court order was April 21, 1937. During the period from May 18, 1938, to May 18, 1943, he had not been arrested or involved in any trouble or difficulty.

On the 1st day of July, 1947, the Bureau of Immigration and Naturalization informed the Court that information had come to its attention which was not previously known, and which it was believed should be considered prior to the time that the Court made disposition of the case on the basis of the hearing held on April 16, 1947. As a result thereof, the Court referred the proceeding to the Immigration and Naturalization Service for investigation and upon completion thereof directed that an application be made to the Court to set a date for an additional hearing. On the 29th day of September, 1947, the Court fixed the 12th day of November, 1947, as the date for the additional hearing. At this hearing the Department again recommended that citizenship be denied for the reason that the petitioner was not a person of good moral character during the period required by law. It was then the contention of the Government that the petitioner was residing with a person who was not his wife, but no witnesses were offered to support the contentions made. It would appear to me that if the Immigration and Naturaliza-

tion Bureau had reliable sources for their information which would indicate the petitioner was living in a manner which was immoral, or not in accordance with the principles recognized in our form of society, it would have been a very simple matter to subpoena said persons to appear before the Court. Even if a witness does not desire to have his identity made known, or appear in Court to testify against his neighbor, I believe it the duty of the representatives of the Government to subpoena said person or persons to appear. It would be extremely unfair and irregular for the Court to deny an application for citizenship on suspicion, and it would be depriving the petitioner of his constitutional rights to not have an opportunity to face those who accuse him of immoral conduct. The only evidence which the Government presented as to the conduct of the petitioner is that information which was given to the Immigration and Naturalization Bureau by the petitioner when he was directed to appear before an examiner on July 9, 1947. At the hearing before the examiner, the petitioner requested the right to have his attorney present, and, on being pressed as to his decision in connection therewith, stated that if it were necessary, he would proceed without his attorney. He stated that his wife was still living and that he had never secured a divorce. That for a number of years he had lived at various rooming houses in the City of Pittsburgh and vicinity thereof. That he had resided as a roomer in a property occupied by a person named Thelma Hays, who was married but who was not residing with her husband. That Thelma Hays subsequently found it necessary to secure a new residence and that in addition to the petitioner, two other persons, one a man and another a woman, resided in said home as roomers. That the petitioner executed the lease for the premises occupied by Thelma Hays for the reason that it was impossible for her to secure the premises; that he had never resided with her in an illicit relationship, and did nothing to provide her with support and maintenance, his only payments to her being four dollars ($4) a week for the room which he occupied. The Government also contended

that Thelma Hays found occasion to need hospitalization on October 28, 1946, and when she entered the hospital, she gave her name as "Thelma DeLeo." The records do not indicate who paid the hospital bill but the petitioner stated that he had no knowledge that this woman used the name of "Thelma DeLeo" and that he did not pay the hospital bill. He had introduced the woman as "Mrs. DeLeo" at the time he secured the lease for the premises, where he is now residing as a roomer, and he made this introduction in order that it would be possible to secure the rental of the premises. It further appears that this woman secured a final decree of divorce from her husband on May 15, 1946. The petitioner called character witnesses, who were persons of good reputation and standing in the community, and who stated that they had known the petitioner for a number of years and that he carried a good reputation in the community for morality, and as a peaceable and law-abiding citizen.

At the completion of the hearing the Court extended the Government an opportunity to offer any testimony that it might desire to refute or rebut the evidence of the good reputation of the defendant for morality, and as a peaceable and law-abiding citizen, or offer any other evidence which would establish circumstances that would tend to prove that the petitioner might not be of good moral character. The Government elected to not offer any testimony to rebut or disprove the explanations given by the petitioner, or to establish that the testimony as to reputation was not true.

█ There is no question but what it is the duty of the petitioner to establish that he is of good moral character not only for the period of five years prior to the time that the petition for naturalization was filed, but during the whole of the period including the date of the final hearing on said petition. This is true for the reason that the requirement that an applicant for citizenship be of good moral character is a continuing statutory requirement which survives the filing date of the petition for citizenship, and persists to and includes the date of the final hearing thereon. United States v. Palmeri, D.C., 52 F.Supp. 226,

900

227; United States v. Jakini, D.C., 69 F. Supp. 707; In re Petition of Gabin, D.C., 60 F.Supp. 750.

 The responsibility for admitting aliens to citizenship is lodged in the courts. The work of the examiners is intended to be of assistance to the courts in discharging that responsibility. United States v. Best, D.C., 73 F.Supp. 654.

In a naturalization proceeding where there have been preliminary hearings before an examiner, the Court may in its discretion examine the petitioner and the witnesses, and must do so if the petitioner so demands, and the United States has an unqualified right to cross-examine the petitioner and his witnesses, and produce evidence on its own behalf. Furthermore, the petitioner may demand that the Government's witnesses be called and an opportunity be given to face his accuser and cross-examine said witness. Petitions of Rudder et al., 2 Cir., 159 F.2d 695.

In this proceeding there is no evidence which indicates that the petitioner is not of good moral character. The petitioner has explained the circumstances under which he lives and is now residing. The Government was afforded an opportunity to disprove his statements which was not done.

"Good moral character" which an alien seeking naturalization must prove results from acts and conduct of an individual, and is of such a character as measures up to the standards of average citizens of the community in which the alien resides.

What is of good moral character within the meaning of the statute is not easy of determination in all cases. The standard may vary from one generation to the other. What are the settled restrictions which exist in society and the way average men of good will act, or what is the ascertainment of the living law as it applies to the facts in this case?

I do not believe it is violative of the standards of the American way of life for an individual to secure as his place of abode accommodations in a rooming house. The actions of the petitioner are of such a character as measure up to the standards of the average citizen of the community in which the petitioner has resided. I, therefore, believe that the petitioner has been and still is a person of good moral character. The application for citizenship is granted.