**UNITED STATES v. CLOUTIER.**

**No. 7412.**

United States District Court
E. D. Michigan, S. D.

Nov. 4, 1949.

---

3. Act of June 5, 1920, c. 250, § 33, 41 Stat. 1007, 46 U.S.C.A. § 688.

4. Act of March 4, 1927, c. 509, § 1 et seq., 44 Stat. 1424, 33 U.S.C.A. § 901 et seq.

Hon. Edward T. Kane, U. S. Attorney, Mr. Kenneth W. Smith, Asst. U. S. Attorney, Detroit, Michigan, for plaintiff.

David I. Rosin, Detroit, Michigan, for defendant.

KOSCINSKI, District Judge.

*Statement of Facts.*

This is an action by the government to revoke and set aside the order admitting the defendant to citizenship, and to cancel the certificate of naturalization issued to her.

The facts were stipulated and no oral testimony was offered by either side.

The stipulation of facts is as follows:

Defendant lawfully entered the United States for permanent residence on September 18, 1937, at the age of 23. The purpose of her entry was to become employed as a domestic in the home of Mr. and Mrs. Joseph Landre in Detroit, Michigan. The proceedings for the migration of Miss Cloutier were initiated by Mrs. Landre. Miss Cloutier had not met Mr. Landre at the time of her immigration to the United States.

During the period of her employment which continued until August, 1941, defendant resided at the home of the Landres. Mrs. Landre was not always well, and asked Miss Cloutier to shop and perform other services for her in the company of Mr. Landre. An infatuation developed.

The Landres had two children, a girl of six years of age, and a boy, three years of age, at the time of Miss Cloutier's entry into the United States.

For some time after Miss Cloutier left the home of the Landres, she and Mr. Landre did not see each other. About the the year 1942, they renewed their personal acquaintance. In January, 1943, after having been employed elsewhere, she accepted a position of employment with a local firm, and at about that time rented an apartment in the City of Detroit.

In the early part of 1943, sexual relations between Miss Cloutier and Mr. Landre, in the State of Michigan, began and continued past the date of her naturalization in August, 1944, during which time Mr. Landre was living with his wife and family; but there is no indication that defendant went out socially with other men at any time.

After having filed a declaration of intention and waiting for the statutory two year period to pass, she filed an application for petition of naturalization on April 6, 1944. The petition was filed July 21, 1944. The application for the petition for naturalization is a form supplied by the government of the United States. All questions on that form were answered truthfully by defendant. The petition for naturalization was prepared after an examiner of the United States Department of Justice, Immigration and Naturalization Service, interviewed petitioner and two witnesses. The examiner found them qualified, and the defendant, as well as her witnesses, were sworn to the truth of their statements. Miss Cloutier was not advised of any specific requirements for naturalization, but was merely asked questions. The Statute provides that a period of thirty days shall elapse between the filing of the petition and its presentation to the court for final judgment. 8 U.S.C.A. § 734. This thirty-day period is for the purpose of an investigation. The government recommended to the court that the petition be granted, whereupon it was granted without objection.

All questions which were asked were answered by defendant and the witnesses. The government had no knowledge of the past of defendant other than what appeared at the examination.

Miss Cloutier stated since her naturalization that she did not believe that having sexual relations with a married man reflects good moral character; however, she did not feel that her own actions were immoral at the time of the conduct complained of, because of her deep infatuation with the married man, nor did she so feel at the time of her naturalization.

It is the claim of the government that the order of admission to citizenship and certificate of naturalization of the defendant were fraudulently and illegally pro-

cured in violation of Secs. 3, and the 2nd and 4th subdivisions of Sec. 4 of the Acts of June 29, 1906, 34 Stat. 596, in that in the proceeding for admission to citizenship the defendant falsely and fraudulently represented that she was a person of good moral character, whereas in truth and in fact, she was not a person of good moral character as required by the naturalization statutes.

Defendant in her answer specifically denies any fraud or illegal procurement in the naturalization as a citizen of the United States.

## Conclusions of Law

This proceeding is brought under authority of 54 Stat. 1158, § 338, Title 8 U.S. C.A. § 738, which provides for the revocation and setting aside of an order admitting a person to citizenship and cancelling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured.

Title 8 U.S.C.A. § 707(a) provides that no person (with exceptions not pertinent hereto) shall be naturalized unless such petitioner, for at least five years immediately preceding the date of filing of the petition for naturalization, has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

■ The provisions of this statute are specific. The requirements therein set forth must be met before an applicant for citizenship may be naturalized. It has been repeatedly held that naturalization is a privilege, not a right, and therefore no alien has the right to naturalization unless he has complied with all the statutory requirements for such naturalization.

There is no right to naturalization unless all statutory requirements are complied with and if the certificate of naturalization is procured where the required qualifications have no existence in fact, it may be cancelled by suit.—Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525.

■ "Illegal procurement" of naturalization certificate results when there is intentional or unintentional disregard for the preliminary requirements or prohibitions fixed by this chapter.—United States v. Kusche, D.C., 56 F.Supp. 201.

■ In the case of United States v. Raverat, D.C., 222 F. 1018, 1019, the court stated:

"Aliens are admitted to citizenship upon their solicitation, and not of right, but of favor. They must possess the qualifications and perform the conditions for admission prescribed by Congress. Amongst these at the time of defendant's admission were that it should be made to appear to the satisfaction of the court that the alien had resided in the United States for five years 'and that during that time he has behaved as a man of a good moral character.' * * * This imports that, to be qualified for citizenship, the alien must be in fact as well as in behavior of good moral character."

A showing of good moral character for a period of five years preceding admission to citizenship was one of the conditions precedent to defendant's admission to citizenship. Defendant argues that all questions in her application for naturalization were answered truthfully; that the petition was prepared after the government examiner interviewed her and her two witnesses and found them qualified, that she was not advised of any specific requirements for naturalization, that after the usual 30-day period of investigation as to the veracity of statements and her background the government recommended to this court that the petition be granted. Defendant further contends that at the time of admission she believed herself to be a person of good moral character, and that in view of these facts, there was no fraud or illegal procurement in connection with her admission to citizenship.

The government, on the other hand, takes the position that the defendant failed to make a complete disclosure of all the facts, which were material and relevant under the statute, that such facts were not discovered before naturalization was

granted, that she was not of good moral character, that she failed to meet one of the requisite qualifications for citizenship, and that her naturalization was therefore illegally procured.

■■ In the case of United States v. Raverat, supra, it was held that substance and not shadow, is the ultimate qualification as a test of good moral character. Although behavior, as testified to by witnesses for an applicant applying for citizenship, is taken as sufficient evidence of good moral character, it is not believed that Congress intended it should be conclusive evidence, precluding inquiry into the alien's actual moral character, even though a certificate of naturalization be issued. If a fact known to petitioner for naturalization, but not disclosed by the petitioner to the naturalization examiners, and not available to them prior to the granting of the petition for naturalization, and discovered only after the granting of the petition for naturalization, showed that a petitioner was ineligible under the statutes to apply for citizenship, in a suit to cancel the order of naturalization the court should not be precluded from inquiring into the petitioner's statutory qualifications for citizenship.

■ Good moral character which an alien seeking naturalization must prove, results from acts and conduct of an individual, and is of such character as measures up to the standards of average citizens of the community in which the alien resides. Petition of De Leo, D.C., 75 F.Supp. 896.

■ It is true, as claimed by defendant, that in proceedings for denaturalization the government, to prevail, must prove its charges in such cases by clear, unequivocal, and convincing evidence which does not leave the issue in doubt. Since this case was submitted on a stipulation of facts, no proofs were submitted, but defendant frankly admits in the stipulation of facts that for some time prior to and continuing past the date of naturalization, she continued to have sexual relations with a married man, then living with his wife and family.

It must be determined, then, whether defendant met the statutory requirements of good moral character, a mandatory requirement under the naturalization statutes, before she was eligible for citizenship.

In United States v. Unger, D.C., 26 F.2d 114, 115, the court cancelled the respondent's certificate of naturalization on the grounds that he was not a person of good moral character at the time of obtaining naturalization upon evidence that petitioner's wife obtained a divorce from him on the grounds of adultery. In its opinion the court stated:

"Under the accepted standard in this country, a person committing adultery is an immoral person, and, when this fact appears as it did in this proceeding, it conclusively follows that the applicant has failed to show that he has maintained a good moral character for the five years preceding the granting of citizenship papers, and admission of such a person to citizenship is contrary to the provisions of the statute and illegal."

One who had committed adultery repeatedly during five years preceding petition for naturalization and admitted adultery even after petition was filed, did not have "good moral character" necessary for naturalization.—Calo v. United States, 400 Ill. 329, 79 N.E.2d 619, 620.

In Estrin v. United States, 2 Cir., 80 F.2d 105, in commenting on whether adultery constituted lack of good moral character, the court said, such an act "is offensive to the generally accepted moral standards of the community."

■ Under these and similar decisions it cannot be said that the conduct of defendant during the five-year period preceding her naturalization measured up to the standards of average citizens of the community in which she resided, and she therefore did not possess the "good moral character" which was one of the prerequisites for application to citizenship. Since naturalization was procured when the prescribed qualifications had no existence in fact, it was illegally procured.

Judgment for plaintiff revoking and setting aside the order admitting the defendant to citizenship and cancelling certificate of naturalization issued to defendant, as prayed for in the complaint.