**In re MOGUS.**

No. 2774–P–144116.

District Court, W. D. Pennsylvania.
July 17, 1947.

No appearance for petitioner.

Hyman Scher, of Pittsburgh, Pa. for Immigration and Naturalization Service.

WALLACE S. GOURLEY, District Judge.

This proceeding relates to a petition for naturalization filed by Jandre Mogus, also known as Andrew Mogus, on December 23, 1943. The question before the Court is whether the petitioner has been and still is a person of good moral character within the meaning of Paragraph 307(a) (3) of the Nationality Act of 1940, 8 U.S.C.A. § 707 (a) (3), so that he may be naturalized as a citizen of the United States.

Jandre Mogus, also known as Andrew Mogus, who was born January 1, 1887, came to this country from Yugoslavia on January 16, 1913, and has continuously resided in the United States, during which period of time he has never been involved in any trouble or difficulty.

However, while still a resident of Yugoslavia, in February of 1911 the petitioner married Katie Perpich. A son was born to this marriage two or three months after the petitioner arrived in this country. The petitioner last communicated with his wife in the year 1918, and has sent no money or aid to the support of his wife or child, from the year 1918 to the present time.

It appears by reference to the Certificate of Admission of the alien that at the Port of New York on April 13, 1913, the petitioner set forth the name of his nearest relative to be his wife. In his Declaration of Intention to become a citizen it was set forth that the petitioner was a widower and that his wife died during the year 1913 and no children were born to said marriage. In the Petition for Naturalization filed on December 23, 1943, the petitioner set forth that he had misunderstood the question as to whether or not he was married when the Declaration of Intention was filed, and that the true fact was that he was living with a widow by the name of Katie but was never married. During the First World War the petitioner registered in accordance with the provisions of the Selective Service Act, the date of said registration being June 5, 1918, and at the time of the registration he set forth that he was single.

At the preliminary hearing held before one of the examiners, the petitioner testified that he was single, that he had never been married, that he had no children, and later made conflicting statements that he was married and his wife died in 1919, and also that he was never married but had lived with a woman in the country of Yugoslavia. A hearing was later held in connection with the application on December 2, 1944, in which the petitioner stated that he was married and had one son whose name was John Mogus who was born in April, 1913, which would be approximately two to three months after the petitioner had come to the United States. He further stated at the time of this hearing that his wife was still living but he was unable to explain the reason for the false or inconsistent statements which he had previously made. In addition to the above matters the Court interrogated the petitioner as to the explanation which he might have for the inconsistency which existed from the time of his entry into the United States to the time of the hearing, and the petitioner was unable to give a satisfactory explanation. During the hearings before the examiner the only explanation which the petitioner could give was that he did not know what was the matter with him or he could not understand why he permitted himself to make the inconsistent statements which exist.

In addition thereto, the petitioner requested one of his witnesses to not make any comment or give any evidence to any examiner of the Naturalization Service that he had been married while a resident of Yugoslavia.

The question, therefore, presented is whether the petitioner has established good moral character during the period required by law, that is, since December 23, 1938, which is a period of five years prior to the filing of the Petition for Citizenship, as contemplated by Section 307(a) of the Nationality Act of 1940, 8 U.S.C.A. § 707 (a) (3).

■ "Naturalization is a privilege not a right" and the burden is on the petitioner to establish facts that entitle him to that privilege, including the fact that he has been of good moral character for the statutory period of five years prior to the filing of his petition for citizenship. "Good moral character" which an alien seeking naturalization must prove results from acts and conduct of an individual, and is of such a character as measures up to the standards of average citizens of the community in which the alien resides. What is of good moral character within the meaning of the statute is not easy of determination in all cases. The standard may vary from one generation to the other. A husband and father has not only a moral and marital obligation in the eyes of God to provide for a wife and child, but an absolute legal obligation to make or provide proper maintenance and care.

■ I am aware that the statute imposing burden on an alien filing a naturalization petition to establish good moral character during the five years immediately

preceding the date of his petition should be liberally construed in cases which sanction forgiveness after the expiration of five years from the date of a disbarring deed. Petition of Zele, 2 Cir., 140 F.2d 773.

However, failure to support or provide for the maintenance and care of a wife or child is a continuing offense, as a result of which this rule of law does not apply in the instant case.

■ Furthermore the phrase "good moral character" should concern the Court not only with the technicalities of the law but also with the settled restrictions which exist in society and the way average men of good will act. In short, the ascertainment of the living law. Petition of R—, D.C., 56 F.Supp. 969.

The petitioner in this case communicated with his wife on several occasions between the time of his entry into this country in January of 1913, and sometime during the year 1918, and also contributed to some extent to her financial aid during this period of time. However, from the year 1918 to the present time, the petitioner, for reasons which he is unable to explain, has done nothing in an effort to contribute to the support of his wife and child, and in fact has not communicated with her during this period of time.

■ Citizenship is a high privilege and is the greatest honor which this Government can bestow upon any person, and when doubts exist concerning a grant of it, the Naturalization Act should be construed with definite purpose to favor and support the Government, and the United States is entitled to the benefit of any doubt which remains as to any essential matter or fact. United States v. Manzi, 276 U.S. 463, 467, 48 S.Ct. 328, 72 L.Ed. 654; United States v. Forrest, D.C., 69 F.Supp. 389.

It is the ambition and dream of many people of foreign lands that some day they may be American citizens, and it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to the individual than it is in this country. It would be difficult and practically impossible to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men. Schneiderman v. United States, 320 U.S. 118, 122, 63 S.Ct. 1333, 87 L.Ed. 1796.

■ I do not see how it can be said that the actions of the petitioner are of such a character as measure up to the standards of the average citizen of the community in which the petitioner has been permitted to reside, during which period he has enjoyed the many opportunities and privileges which exist in the United States. The conduct of the petitioner continues to this day, as far as neglect to show some interest or concern in the welfare of his wife, his child at this time, no doubt, being self-sustaining. In addition thereto, the petitioner has wilfully made inconsistent statements in connection with various questions which he has been requested to answer from time to time in connection with the proceeding. Since the petitioner is a man of sixty years and has resided in this country for more than thirty-four years, I do not believe that he did not understand the nature of the questions propounded to him. His actions in this respect were allowed to exist for a reason which the petitioner has not been able to satisfactorily explain, and which indicate to the Court a lack of good moral character on his part. I, therefore, believe that the petitioner has not established a good moral character as provided by the Nationality Act.

■ Furthermore the acts and conduct of the petitioner, in failing to provide for his wife and child, do not measure up to the standards of the average American citizen, and I do not believe that the petitioner would be well disposed to the good order, welfare and happiness of this country. In re Paoli, D.C., 49 F.Supp. 128; In re Bookschnis, D.C., 61 F.Supp. 751; United States v. Forrest, D.C., 69 F.Supp. 389; United States v. Jakini, D.C., 69 F.2d 707; In re Petition of R—, D.C., 56 F.Supp. 969; Petition of Zele, 2 Cir., 140 F.2d 773.

The Petition for Naturalization is, therefore, refused. An appropriate order will be filed herewith.