Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055.

These factors do not "make it reasonable and just, according to our traditional conception of fair play and substantial justice", International Shoe Co. v. State of Washington, supra, 326 U.S. 320, 66 S.Ct. 160, 90 L.Ed. 95, 161 A.L.R. 1057 to require defendant to defend this suit here. See Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 533, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 268, 37 S.Ct. 280, 61 L.Ed. 710; Yeckes-Eichenbaum, Inc., v. McCarthy, 290 N.Y. 437, 49 N.E.2d 517.

In addition, it should be noted that in an action brought against this same defendant by a different plaintiff, the New York courts reached the same conclusion on substantially the same facts. Worthy v. Louisville & N. R. Co., Sup.1948, 79 N.Y.S. 2d 588, affirmed, App.Div., 96 N.Y.S.2d 489.

The motion to dismiss for lack of jurisdiction of the person is granted. This disposition renders unnecessary a determination of the other questions raised.

Settle order on notice.

## In re MARKIEWICZ.

No. 2094.

United States District Court,
W. D. Pennsylvania.

April 5, 1950.

No counsel for petitioner.

GOURLEY, District Judge.

This action relates to a petition for naturalization filed by Steve Markiewicz on August 21, 1944.

The Immigration and Naturalization Bureau recommends that citizenship be denied for the following reasons:

1. The petitioner has failed to establish continuous residence in the United States during the period required by law, that is since August 21, 1939.

2. The petitioner has failed to establish that he has been and still is a person of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States.

Petitioner was lawfully admitted to the United States for permanent residence on November 4, 1913. He was born in a territory formerly a part of Russia which later became a part of Poland. He has continuously resided in the United States since his lawful admission.

A Deportation Order was issued against the petitioner on February 13, 1933. The basis for the Order was that the petitioner was a member of an organization that believed in, advised, and advocated the overthrow by force and violence of the Government of the United States. Said Order is still outstanding and cannot be effected for the reason that deportation to Poland or to Russia was not possible because of the refusal of said countries to issue passports. The Deportation Order was issued on the basis of an Act of Congress which provides, inter alia, that any alien who was at the time of entering the United States, or who has been at any time thereafter, a member of any one of the classes of aliens who believe in, advise, advocate or teach, or who are members of or affiliated with any organization, association, society or group that believes in, advises, advocates or teaches the overthrow by force or violence of the government of the United States or of all forms of law, shall, upon the warrant of the Attorney General, be subject to deportation. 8 U.S.C.A. § 137(a) to (g), inclusive.

The government contends that the issuance of the Deportation Order on September 13, 1933, which is still outstanding, constitutes, as a matter of law, a termination of legal permanent residence so as to pre-

clude the petitioner from meeting the continuous residence requirement of five years as provided by the Nationality Act. 8 U.S.C.A. § 707(a).

It has been the finding of the immigration authorities, and which was the basis for the entry of the Deportation Order, that the petitioner was a member of the Communist Party and engaged in activities which furthered the aims and purposes of Communism. The government does not contend that the petitioner is precluded from being naturalized by virtue of the provisions of Section 305 of the Nationality Act of 1940, 8 U.S.C.A. § 705, because of his former membership in the Communist Party. This position is taken by the government for the reason that the petition for naturalization was filed on August 21, 1944, and the petitioner has not been a member of any organization of the character referred to in Section 305 of the Nationality Act during the period of ten years prior to August 21, 1944. In short, the government states that the petitioner is not precluded from being naturalized due to his communistic connections more than ten years ago, but that the Deportation Order based on his communistic activities does bar the petitioner's right to establish continuous residence in the United States, for five years prior to the filing of his petition on August 21, 1944.

The question as to the legality of the Deportation Order has not been raised and no judgment is therefore being passed as to whether or not the order was issued in accordance with the provisions of law. The problem resolves itself into the question as to whether a person who is lawfully admitted to the United States loses his legal residence status for the purpose of meeting the requirements of the Nationality Act at the time that a deportation order is issued and remains outstanding.

■ One who has entered the United States lawfully may remain unlawfully since the unlawful remaining of an alien in the United States is an offense distinct in its nature from unlawful entry into the United States. Kumaki Koga et ux. v. Berkshire, 9 Cir., 75 F.2d 820.

There is no dispute that the petitioner has lived in the United States continuously with the intention to make this country his permanent residence and domicile.

■ Residence in the United States for the statutory period required for five years immediately preceding the application for citizenship is jurisdictional under Section 307(b) of the Nationality Act of 1940. United States v. Menichelli, D.C., 65 F. Supp. 738; Schwinn v. United States, 9 Cir., 112 F.2d 74, affirmed 311 U.S. 616, 61 S.Ct. 70, 85 L.Ed. 390.

Has the petitioner established continuous residence in the United States during the period required by law, that is since August 21, 1939, as contemplated by Section 307(a) of the Nationality Act of 1940? 8 U.S.C.A. § 707(a).

■ If Congress had desired, it could have provided that a person subject to an order of deportation shall not be eligible for naturalization. The fact is that Congress has taken no such action although courts have in the past admitted persons to citizenship subject to deportation. The residence required of aliens by the Nationality Act providing for continuous residence in the United States for a stated time as a prerequisite to citizenship is a legal residence. Petition of Popper, D.C., 79 F.Supp. 530.

■ An alien who submits an application for naturalization in accordance with law is entitled to a hearing thereon, and if the requisite facts are established, he is entitled as of right to admission to citizenship. It would be an incongruous situation, to say the least, that an alien who comes within the term of the Acts of Congress may be deported without a hearing and without an adjudication of his rights for admission to citizenship. Petition of Kavadias, 7 Cir., 177 F.2d 497.

■ Where an alien is lawfully admitted to the United States and an order of deportation is subsequently entered, which is not effectuated due to the lack of passport facilities, and no action is taken on the deportation order, the issuance of said order does not terminate the legal residence so as to preclude the petitioner from meeting the continuous residence requirement of Section 307(a) of the Nationality Act. Petition

of Popper, supra; Petition of Wright, D.C., 42 F.Supp. 306; United States v. Schwarz, D.C., 82 F.Supp. 933; Petition of Corres, D. C., 79 F.Supp. 265.

The petitioner has met the requirements of law as to five years' continuous residence prior to the date of filing his application for citizenship.

Has the petitioner established during the period of time required by law that he is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States?

■ Good moral character which an alien seeking naturalization must prove results from acts and conduct of an individual, and is of such a character as measures up to the standards of average citizens of a community in which the alien resides. It is a prerequisite of 'admission to citizenship that said good moral character be established. Nationality Act of 1940, § 307(a)(b) and 8 U.S.C.A. § 707(a)(b); In re Mogus, D.C., 73 F.Supp. 150.

During the period from 1929 to 1945, the petitioner engaged in various acts of misconduct which related to public indecency and the extension of efforts to press his attention on the feminine sex. In November or December of 1929, while attending a theatre, he became involved with a girl approximately twenty-nine years of age, which resulted in his arrest and the payment of a fine. In 1937, while attending a theatre, he exposed his person in the presence of two girls ten to twelve years of age, which resulted in his arrest and an imposition of a fine. On another occasion in the year 1937 he was arrested for showing unusual interest in a young girl five to six years of age. In May of 1940, while attending church, he exposed himself to a girl seventeen years of age, which resulted in his arrest and subsequent commitment to a state hospital for mental delinquents. He was confined to that institution for approximately fourteen months. In December of 1945, he was again arrested for suspicious activities in following two girls, which resulted in his arrest and imposition of a fine.

There appears to be no doubt that not only during the period of five years prior to the filing of a petition for naturalization but during the time prior and subsequent thereto he permitted himself to engage in activities which would classify him as a moron and exhibitionist. He was duly adjudicated by state authorities as a person who was a danger in the community due to his inability to be governed by normal moral standards.

Although the Naturalization Statute says nothing about the necessity for a petitioner to be of good moral character prior to the beginning of the five-year period, I do not believe it was intended that an applicant for citizenship should be permitted to draw an iron curtain across any part of his past. The petitioner's activities prior to the commencement of the five-year period indicate that his actions during the five-year period and subsequent thereto establish his inability to control the most unfortunate condition with which he is afflicted.

■ The provisions of the Nationality Act that no person shall be naturalized unless immediately preceding the date of the filing of the petition for naturalization he has been of good moral character does not prevent consideration of a petitioner's record further back than five years in determining whether the alien is entitled to naturalization. In re Lipsitz, D.C., 79 F.Supp. 954.

■ It is the duty of the petitioner to establish that he is of good moral character not only for the period of five years prior to the time that the petition for naturalization was filed, but during the whole of the period including the date of the final hearing. The requirement that an applicant for citizenship be of good moral character is a continuous and statutory requirement which survives the filing date of the petition and includes the date of the final hearing thereon. In re Petition of De Leo, D.C., 75 F. Supp. 896.

■ What is of good moral character within the meaning of the statute is not easy of determination. The standard may vary from one generation to another. The settled restrictions which exist in society and the way average men of good will should

act has not varied in any degree as to the manner in which an individual should conduct himself in obeying moral standards. A person seeking citizenship has good moral character if his conduct conforms to generally accepted moral conventions current at the time. Repouille v. United States, 2 Cir., 165 F.2d 152.

 The actions of the petitioner were of such a character as to not measure up to the standards of the average citizen of the community in which the petitioner has been permitted to reside, and therefore he is not of good moral character and well disposed to the good order and happiness of the United States.