IN THE MATTER OF THE PETITION OF MARCO REGI-
NELLI, No. 2186–P–9291, FOR NATURALIZATION
(MARCO REGINELLI, PETITIONER-RESPONDENT;
UNITED STATES OF AMERICA, APPELLANT).

Argued December 5, 1955—Decided January 3, 1956.

*Mr. Carl Kisselman* argued the cause for respondent (*Mr. John B. Brumbelow*, of the Pennsylvania Bar, and *Mr. Jack Wasserman*, of the District of Columbia Bar, on the brief).

*Mr. Raymond Del Tufo, Jr.*, United States Attorney, argued the cause for appellant (*Mr. Charles H. Nugent* and *Mr. Herman Scott*, Assistant United States Attorneys, on the brief).

The opinion of the court was delivered by

WACHENFELD, J. The United States of America appeals from a judgment entered in the Atlantic County Court, 36 *N. J. Super.* 455, rejecting the adverse recommendations of the naturalization examiner and granting the respondent's petition for citizenship. Deeming it a cause of public concern, we granted certification prior to argument in the Appellate Division.

 Power to determine applications of aliens to become United States citizens is conferred upon the County and Superior Courts by *N. J. S.* 2A :53–1, and it is not disputed

that a judgment granting a naturalization petition is final and therefore appealable. *Tutun v. U. S.*, 270 *U. S. 568*, 46 *S. Ct.* 425, 70 *L. Ed.* 738 (1925).

The issue presented is governed by the Immigration and Naturalization Act of 1940. The pertinent section of this act, 54 *Stat.* 1142, *sec.* 307(*a*), 8 *U. S. C.* 707(*a*), repealed 66 *Stat.* 280,[1] provides in substance that no petitioner shall be granted naturalization unless he shows that for a period of five years prior to the date of filing his petition he "* * * has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

The inquiry here is whether the respondent, within this statutory definition, established good moral character.

Prior to filing the present petition in September 1952, the respondent Reginelli had filed three previous petitions for naturalization, with the following results:

(1) Petition filed June 2, 1937 in the Court of Common Pleas, Northumberland County, Sunbury, Pennsylvania—denied October 5, 1939 for lack of prosecution;

(2) Petition filed October 10, 1944 in the United States District Court of Camden, New Jersey—denied October 17, 1949 by then Chief Judge Fake, who found Reginelli was not of good moral character because of a Mann Act, 18 *U. S. C. A.* §§ 2421–2423, conviction which occurred in 1942, within five years of the date of the filing of the petition. See *Petition of Reginelli*, 86 *F. Supp.* 599 (*D. C. N. J.* 1949);

(3) Petition filed March 23, 1950 in the United States District Court of Camden, New Jersey—denied August 4, 1950 on Reginelli's own motion.

The instant effort is the respondent's fourth attempt at naturalization. His petition, after being denied by the naturalization examiner, was granted on June 21, 1955 in the Atlantic County Court, the petitioner claiming his residence was then in Margate City, located in that county.

---

[1] Now *Immigration and Nationality Act of 1952*, § 316(*a*), 8 *U. S. C. A.* § 1427(*a*).

The respondent Reginelli is a native of Italy and unmarried. He arrived in the United States on June 4, 1914 and has not left the country since.

At the hearing before the naturalization examiner, he admitted 16 arrests during the period 1917 to 1942. He was convicted of crime on six of these occasions, three times receiving the imposition of fines and three times receiving prison sentences. The offenses in this classification included liquor violations, cheating at cards, lottery, fraudulent conversion, disorderly conduct and violation of the Mann Act.

The last arrest or conviction was in 1942 on the Mann Act charge, respondent having been convicted of transporting a woman from New Jersey to Florida for immoral purposes.

Reginelli produced two character witnesses who testified before the examiner as to his good moral character during the five years preceding the filing of his petition.

At the hearing and here the issues resolved themselves into Reginelli's continued illicit relations with the woman in question, Louise Abate, and the sources of his present income. When asked by the examiner whether during the five years preceding the filing of his petition he continued to have improper relations with the Abate woman, he refused to answer the question and his counsel pleaded the Fifth Amendment on his behalf.

The Government insists this incident be taken into consideration as the respondent, in making application for naturalization, was under obligation to make a full, frank disclosure of all facts bearing upon his right to citizenship and in effect waived any right to rely upon the provisions of the Fifth Amendment. See *U. S. v. Accardo*, 113 *F. Supp.* 783, 787 (*D. C. N. J.* 1953), affirmed *per curiam* 208 *F. 2d* 632 (3 *Cir.* 1953), *certiorari* denied 347 *U. S.* 952, 74 *S. Ct.* 677, 98 *L. Ed.* 1098 (1954).

Some doubt is cast upon the rule so enunciated by *Schmidt v. U. S.*, 177 *F. 2d* 450 (2 *Cir.* 1949). We do not find it necessary to decide this conflict as our conclusion is based upon other grounds, as will be seen hereafter.

Other conduct is called to our attention by the Government's brief, relating to an alleged arrest of the respondent in a hit-and-run accident in 1948, but we give it no concern as we deem the Government failed in its proof in this respect.

As to the statutory prerequisites of good moral character for five years prescribed in the act, some federal courts have determined that conduct outside the statutory period is immaterial in determining the applicant's qualifications for naturalization. *U. S. v. Clifford*, 89 *F. 2d* 184 (2 *Cir.* 1937); *U. S. v. Rubia*, 110 *F. 2d* 92 (5 *Cir.* 1940); *Petition of Zele*, 127 *F. 2d* 578 (2 *Cir.* 1942); *Application of Murra*, 178 *F. 2d* 670 (7 *Cir.* 1949).

Much judicial support, however, is given the view that the court is not so restricted or limited and may consider a petitioner's conduct outside the statutory period in concluding whether or not good moral character was established by the record. *Ralich v. U. S.*, 185 *F. 2d* 784, 788 (8 *Cir.* 1950); *Marcantonio v. U. S.*, 185 *F. 2d* 934 (4 *Cir.* 1950); *In re Lipsitz*, 79 *F. Supp.* 954, 956 (*D. C. Md.* 1948); *In re Markiewicz*, 90 *F. Supp.* 191, 194 (*D. C. W. D. Pa.* 1950); *In re Bespatow*, 100 *F. Supp.* 44, 45 (*D. C. W. D. Pa.* 1951).

These authorities rejecting the limited view hold that citizenship, being a high privilege, is not to be measured by an artificial or inflexible rule and a petitioner's past completely cut off without the right to consider it no matter what the circumstances may be. In substance, they conclude the five-year period of the statute is merely the minimum requirement for naturalization, nevertheless permitting, if the circumstances warrant it, a denial for something which occurred prior thereto.

We prefer to embrace these latter adjudications as establishing a rule more workable and practical, conducive of sounder and more realistic justice, particularly where, as here, the past may by logical inference illuminate some presently occurring development.

As to the respondent's source of income, he acknowledged that during the five-year period preceding the hearing he had reported income for federal income tax purposes of from

$25,000 to $50,000 per year. His only known source of income was from a plastics manufacturing company, some real estate and Government bonds which netted him a total of between $7,000 and $8,000 per year.

When asked to explain his other income, he testified the additional income which he reported was made by wagering at race tracks, including Atlantic City, Garden State, Pimlico, Bowie and the Florida tracks. When asked by the examiner to name any horse upon which he had won any considerable sum of money, he was unable to do so. He could not even remember whether he had been at the Garden State track within the past year, nor could he remember whether he had been or when he had last been at that track. He could not recall how much he had won on any single day.

In a vain effort to bolster his testimony, he offered to produce race track programs showing the horses he had bet on and his winnings. There was an agreement upon the record that he would submit this information to the examiner through his attorney. He never did so, however, and when reminded of it at the hearing before the County Court, he still failed to produce them and made no offer to do so.

The hearing examiner made findings of fact rejecting Reginelli's story as to his main source of income as incredible and found specifically that the applicant had not sustained his burden of showing that he was of good moral character, and therefore recommended that his citizenship petition be denied.

These recommendations, as noted above, were rejected by the County Court, which was of the opinion that the Government's charges against Reginelli rested upon hearsay, rumor and inferences derived from his past bad record.

On a petition for naturalization, the burden of proving good moral character and the applicant's eligibility for citizenship rests upon him, and any doubt concerning the qualifications must be resolved against the applicant and in favor of the United States. *U. S. v. MacIntosh*, 283 *U. S.* 605, 51 *S. Ct.* 570, 75 *L. Ed.* 1302 (1931); *U. S. v. Schwimmer*, 279 *U. S.* 644, 49 *S. Ct.* 448, 73 *L. Ed.* 889 (1929); *U. S.*

v. *Manzi*, 276 *U. S.* 463, 48 *S. Ct.* 328, 72 *L. Ed.* 654 (1928);
*Tulun v. U. S., supra; Brukiewicz v. Savoretti,* 211 *F. 2d*
541 (5 *Cir.* 1954).

The County Court did not hear any of the testimony and
came to its conclusion on the same record before the examiner
which is the present record before us. It is significant that
the court, in discussing the issues before rendering its de-
cision, noted: "Although the record is not as full as it
should be as to the petitioner's actual conduct during the
crucial five-year period * * *," and despite the exam-
iner's suggestion to the court "to question the petitioner
more closely about this in the course of this hearing," no
further testimony was adduced either by direction of the
court or by the applicant's counsel.

We have read and carefully analyzed Reginelli's testimony
in its entirety, and we must conclude that by and large his
evidence is unworthy of belief. Throughout he was evasive
and at times to a point of outright untruthfulness. It was
manifest he had no desire or intention to make a complete
disclosure to the examiner of his past record and his present
activities but sought to withhold as much information as
he could wherever it was possible.

It was established in a prior application and so found
by the federal District Court in 1949 that Reginelli's only
source of income then was from gambling. His prior crim-
inal activities and record, plus his unsatisfactory explanation
of his present sources of income, under these circumstances,
compel the conclusion that his large, otherwise unexplained
income during the period into which we are inquiring was
still derived from the same illegal gambling activities.

His attempted explanation of the sources of his income,
*i. e.,* that he earned it from wagering on race horses, was
incredible, especially in view of his inability to recall the
name of a single horse on which he had won a large sum
of money during the preceding five years, although he at
times bet thousands of dollars. Additionally, credulity would
be imposed upon to a marked degree were we to believe
that the respondent could be so uniformly and consistently

successful in so uncertain and precarious a venture as his track endeavors.

The record shows that his answers were conflicting, vague and unresponsive. His attitude and general demeanor were wholly unconvincing to portray a reformation from an admittedly badly spotted past to a forthright, reasonably clean status entitling him to the cherished advantages of the citizenship he sought.

■■ The burden of proof in this regard was upon him, and his failure in his obligation to sustain it is evident throughout the record before us. Under our present Judicial Article we have the right to review matters of fact as well as law. *Colacurcio Contracting Corp. v. Weiss*, 20 *N. J.* 258 (1955).

Our conclusions are in accord with those reached by the examiner, and we find that the respondent has failed to prove good moral character as required.

The judgment below granting citizenship is reversed and the petition is denied.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.