**Petition for NATURALIZATION of Evelyn May MAYALL.**

**No. 198523.**

United States District Court
E. D. Pennsylvania.
Aug. 12, 1957.

**558**

Earl J. Gratz, Philadelphia, Pa., for libellant.

William J. Cochrane, Philadelphia, Pa., for respondent.

GANEY, District Judge.

This matter is before us on a petition for naturalization opposed by the Immigration and Naturalization Service on the ground that the petitioner has failed to establish that she has been a person of "good moral character" during the five years preceding the filing of her petition, within the meaning of § 316(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1427(a). From the information presented to it, the court makes the following

### Findings of Facts.

1. The petitioner is a native and national of Great Britain, and has resided continuously in the United States since her arrival here on February 3, 1947.

2. She was married on May 18, 1940, to Henry Frederick William Harbott in the County of Essex, England.

3. On January 27, 1947, her husband obtained a decree of divorce against her in the High Court of Justice, Probate, Divorce and Admiralty Division, sitting at Strand, in the County of Middlesex, England, on the ground that petitioner had been guilty of adultery with one Elmer Russell Mayall.

4. The decree of divorce named Elmer Russell Mayall as the corespondent; it did not contain any prohibition against petitioner's remarrying.

5. The divorce law of Great Britain in effect at the time, permitted the remarriage of divorced persons "as if the prior marriage had been dissolved by death." [1]

6. Shortly after the petitioner entered this Country in February of 1947, she came to Pennsylvania and has resided in this State ever since.

7. On or about September 20, 1947, the petitioner and Elmer Russell Mayall obtained a Pennsylvania marriage license. Before obtaining the license, they made full disclosure to the Marriage License Bureau at Doylestown, Bucks County, Pennsylvania, of petitioner's previous marriage and divorce, and of his having been named as corespondent in the divorce decree.

8. On October 2, 1947, they were married in the Scottsville Methodist Church, Bucks County, Pennsylvania. At the time, petitioner's former husband was still living.[2] This marriage was not

---

1. See Supreme Court of Judicature (Consolidation) Act of 1925, 15 and 16 Geo. 5, C. 49, 11 Halsbury's Statutes of England, 820. Also see Matrimonial Causes Act of 1950, 14 Geo. 6, C. 25, 29 Halsbury's Statutes of England, 388.

2. There has been no evidence offered to show that petitioner's first husband was

consummated in Pennsylvania for the purpose of evading the laws of any other jurisdiction.

9. From the date of her second marriage, the petitioner and Elmer Russell Mayall, believing themselves to be legally married, lived together as wife and husband in Pennsylvania. Subsequent to this marriage, two children were born to them in Philadelphia, Russell George and Walter Edward.

10. On July 20, 1953, she filed her petition for naturalization. In this petition she fully disclosed the facts of her previous marriage and divorce in Great Britain and of her application for a license and marriage in Pennsylvania. At the preliminary examination of the petitioner before a Naturalization Examiner, she testified under oath that she had committed adultery in 1946 with Elmer Russell Mayall and that on account of this act her first husband obtained the British divorce decree against her.

11. Except for the Naturalization Service's contention relating to the applicability of § 9 of the Pennsylvania Act of March 13, 1815, 6 Sm.L. 286, 48 P.S.Pa. § 169, the evidence establishes that petitioner is and has been a person of good moral character for the five years previous to the filing of her petition.

## Discussion

The Naturalization Service maintains that by virtue of § 9 of the Pennsylvania Act of March 13, 1815, supra, petitioner is not validly married to Elmer Russell Mayall, is living in a meretricious relationship with him, and she is, therefore, unable to prove that she has been a person of good moral character for a period of at least five years prior to the filing of her petition.

█ Section 9 of the Pennsylvania Act of 1815 provides in part: "The husband or wife, who shall have been guilty of the crime of adultery, shall not marry the person with whom the said crime was committed during the life

of the former husband . . .." This section imposes an absolute personal incapacity on the guilty party to a divorce suit for adultery to remarry the corespondent during the lifetime of the person who obtained the divorce. In re Stull's Estate, 1898, 183 Pa. 625, 39 A. 16, 39 L.R.A. 539. The Pennsylvania Marriage Law of 1953, Act of August 22, P.L. 1344, 48 P.S.Pa. § 1–1 et seq., did not repeal the provisions of § 9 of the Act of 1815, insofar as they impose an absolute incapacity to marry. Section 23 of the Marriage Law of 1953, 48 P.S.Pa. § 1–23; Warrenberger v. Folsom, 3 Cir., 1956, 239 F.2d 846, 849. Is the incapacity imposed by § 9 applicable to a person who resides and marries in Pennsylvania even though the divorce was rendered in a jurisdiction which permits the marriage?

█ There is no decision of a Pennsylvania Court of state-wide jurisdiction on this point. There is, however, a Pennsylvania common pleas court case which holds that it is applicable. See Kalmbacher v. Kalmbacher, Susq.Co. 1945, 63 Pa.Dist. & Co.R. 195. This case cites In re Stull's Estate, supra, as its authority. But in the Stull's Estate case, a Pennsylvania domiciliary, after having been divorced in Pennsylvania for committing adultery, attempted to evade the prohibition of § 9 of the Act of 1815 by marrying the corespondent in a state which did not have such a statute on its books. The Court of Appeals for the Second Circuit, in disagreeing with the construction put upon § 9 of the Pennsylvania Act by the Kalmbacher case, is of the firm conviction that if the question were presented to a Pennsylvania court of state-wide jurisdiction, that court would also disagree with that case. See Lembcke v. United States, 2 Cir., 1950, 181 F.2d 703. In that case, which was an action to recover proceeds under a National Life Insurance policy, the plaintiff and the decedent were each divorced in New

---

dead at the time of petitioner's second marriage. But since the burden of proof is on the petitioner to establish good

moral character (Taylor v. United States, 5 Cir., 1954, 231 F.2d 856), we must assume that he was alive at the time.

York by their respective spouses on the ground of adultery. The divorce decrees respectively forbade plaintiff and decedent to marry any person during the life of her or his former spouse without the divorce court's consent. Without obtaining such consent and while their former spouses were still alive, the plaintiff and decedent were married to each other in Pennsylvania in 1943. Nevertheless, the Court held that plaintiff was the "widow" of the decedent and she was therefore a permissible beneficiary within the meaning of 38 U.S.C.A. § 802(g). With all due respect to a Court whose opinions we highly regard, we must disagree with the narrow interpretation placed upon § 9 of the Pennsylvania Act by the Lembcke case. From our reading of In re Stull's Estate, supra, and Schofield v. Schofield (No. 1), 1912, 51 Pa.Super. 564, we earnestly believe that a Pennsylvania court of state-wide jurisdiction would hold that the personal incapacity to marry imposed by § 9 is applicable to all guilty parties marrying the corespondent within the confines of Pennsylvania regardless of where the divorce was obtained.

■■ In order to determine whether a petitioner has met his burden of establishing that he is a person of good moral character, we must first ascertain whether Congress has labeled, directly or by implication, the conduct in question as not measuring up to good moral character. For example, see In re Lee Wee's Petition, D.C.S.D.Cal.1956, 143 F.Supp. 736. When Congress is silent on the question, we should see if the petitioner's character coincides with the generally accepted mores or standards of the average citizen of the community in which the petitioner resides. Brukiewicz v. Savoretti, 5 Cir., 1954, 211 F.2d 541; In re Mogus, D.C.W.D.Pa.1947, 73 F.Supp. 150; In re Markiewicz, D.C. W.D.Pa.1950, 90 F.Supp. 191. The personal view of the judge who is ruling on the petition is of no importance. If the petitioner's conduct fails to satisfy the community test, then we should see whether the "common conscience", when it is possible of being ascertained, of the country as a whole also looks disfavorably upon such conduct. See United States v. Francioso, 2 Cir., 1947, 164 F.2d 163; Johnson v. United States, 2 Cir., 1951, 186 F.2d 588; Petition of F—— G——, D.C.S.D.N.Y.1956, 137 F.Supp. 782, 785. The collective viewpoint of the individual states and territories as expressed through their laws, statutory and decisional, is acceptable evidence of that common conscience.

■ On the issue before us, Congress has given us no clue as to its thought on the matter. When we apply the community test, petitioner's conduct, it seems to us after we have read the Pennsylvania cases of In re Stull's Estate, Schofield v. Schofield (No. 1), and Kalmbacher v. Kalmbacher, supra, does not meet the test. Therefore we must ascertain the common conscience of the country as a whole concerning the conduct in question. Only three other States, Louisiana, Tennessee and New York, have provisions in their laws similar to those of § 9 of the Pennsylvania Act of 1815.[3] Under certain circumstances, after three years have elapsed, a New York Court may permit the guilty party to marry the corespondent.[4] In Vir-

3. Art. 161 of the Louisiana Civil Code of 1932, L.S.A., provides: "*Adultery-Marriage with accomplice forbidden.* In case of divorce, on account of adultery, the guilty party can never contract matrimony with his or her accomplice in adultery, under the penalty of being considered and prosecuted as guilty of the crime of bigamy, and under the penalty of nullity of the new marriage."

Section 8452 of the Tennessee Code of 1938 (now § 36–831 of the 1956 Code)

states: "*Marrying Again, Except With Co-adulterer, When.* When a marriage is absolutely annulled, or dissolved, the parties shall severally be at liberty to marry again; but a defendant who has been guilty of adultery shall not marry the person with whom the crime or act was committed, during the life of the former husband or wife."

4. Section 8 of Chapter 14, Domestic Relations Law, McKinney's Consolidated Laws of New York says: "*Marriage*

ginia, a court *may* decree that the guilty adulterous party shall not remarry, but such a decree may be revoked after the expiration of six months.[5] The Territory of Puerto Rico imposes a five year inability to contract marriage where the parties have been convicted of adultery by final judgment.[6] The absence of similar pronouncements in the remaining states and territories, it seems to us, is a fairly good indicator of the attitude of the country as a whole regarding the freedom of the guilty adulterous party against whom a decree of divorce has been obtained to marry the corespondent, paramour, or accomplice in adultery. Thus if at the time petitioner was married in Pennsylvania, she resided in and was married in any territory or state of the United States other than Pennsylvania, Louisiana or Tennessee, such a marriage would have been valid and recognized as such in every other territory or state, including the last three named States, and her moral character would never have been questioned by the Naturalization Service on the ground that she married and lived with her correspondent. That petitioner, by fortuitous circumstances, chose to reside, obtain a license, and have her marriage solemnized by a church ceremony in one of the few states whose public policy is against such a marriage, should not be determinative, in our opinion, of whether her subsequent living with Elmer Russell Mayall renders her moral character good or bad within the meaning of § 316(a) of the Immigration and Nationality Act of 1952. It is only fair then that petitioner's conduct be looked upon in the same light as one would look upon a person, in the same position as petitioner, who went through the same procedure of getting married, as did petitioner, in one of the territories or states other than Pennsylvania, Louisiana or Tennessee.

### Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter in this proceeding.

2. Petitioner has established that she is and has been a person of good moral character for the period of five years immediately preceding the date of her filing of her petition for naturalization.

Accordingly, the recommendation of the United States Naturalization Examiner that the petition be denied on the ground that the petitioner has failed to establish good moral character during the period required by law is overruled, and the petition will be approved.

*after divorce for adultery.* * * * a defendant for whose adultery the judgment of divorce has been granted in this state may not marry again during the lifetime of the complainant, unless the court in which the judgment of divorce was rendered shall in that respect modify such judgment, which modification shall be made only upon satisfactory proof that three years have elapsed since the decree of divorce was rendered, and that the conduct of the defendant since the dissolution of said marriage has been uniformly good; and a defendant for whose adultery the judgment of divorce

has been rendered in another state or country may not marry again in this state during the lifetime of the complainant unless three years have elapsed since the rendition of such judgment and there is no legal impediment, by reason of such judgment, to such marriage in the state or country where the judgment was rendered. * * * "

5. Section 5114 (now § 20–119, 1950 Code), Virginia Code of 1942.

6. Section 71(5), Civil Code of Puerto Rico, 1930.