**In re Petition for Naturalization of Andras HUYMAIER.**

**No. 233517.**

United States District Court, E. D. Pennsylvania.

June 13, 1972.

George Gershenfeld, Philadelphia, Pa., for petitioner.

Bartholomew J. Rumaker, Naturalization Examiner, Philadelphia, Pa., for I. N. S.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

The petitioner, a native and national of Hungary, was lawfully admitted to the United States for permanent residence on December 16, 1956. On March 12, 1970, petitioner filed the instant petition for naturalization in accordance with Section 316(a) of the Immigration and Nationality Act, 8 U.S.C. § 1427. We are asked to determine whether the petitioner has established good moral character during the five year period immediately preceding the filing of the petition for naturalization,[1] in light of the fact that during this period petitioner has failed to support his minor children by his first marriage as required by a support order. For the reasons hereinafter stated, after a *de novo* hearing pursuant to 8 U.S.C. § 1447, we conclude that he is of good moral character.

The relevant facts may be briefly recited: The petitioner, Andras Huymaier, first applied for citizenship on June 13, 1968 in Philadelphia, Pennsylvania. This petition for naturalization was withdrawn by petitioner by reason of his inability to establish good moral character during the then statutory period because of his meretricious union with Victoria Janoro, his present wife. This impediment to naturalization having been removed by the divorce of petitioner's first wife in 1968 and his marriage to Victoria Janoro, petitioner filed his current petition.

In his current petition, petitioner listed four children on his application, three of whom lived in his home and one of

whom was in a foster home. Two of these four children, Jolan and Andrew, Jr., were children of his first marriage. However, petitioner has two other children by his first marriage, Karoly and Erika, not mentioned in his petition, to whom he is required to pay $20.00 per week pursuant to a Court Order dated May 17, 1966. As a result of petitioner's failure to keep current on his support payments, an order was entered on January 25, 1971, requiring petitioner to make an additional payment of $20.00 weekly on account of arrears. Based on petitioner's accumulated arrearages of $1,770.00 as of April 10, 1970, the government recommends that the petition for naturalization be denied for failure of petitioner to show good moral character.

The standard which this Court must apply in ascertaining whether the petitioner has demonstrated good moral character was clearly set forth in In re Mayall's Petition, 154 F.Supp. 556, 560 (E.D.Pa.1957):

> When Congress is silent on the question, we should see if the petitioner's character coincides with the generally accepted mores or standards of the average citizen of the community in which the petitioner resides.

In determining whether failure of the petitioner to make support payments to his two minor children pursuant to the Court Order of May 17, 1966 shows that petitioner lacks good moral character we are guided by a long line of cases which hold that:

> [I]t is clear that the average man of good will of this community considers that a father has both a legal and moral obligation to support and clothe his children. See 18 P.S. § 4733. Also, the common conscience of this country has included, at least since

1. The Immigration and Nationality Act, 8 U.S.C. § 1427(a), provides in pertinent part:

> No person . . . shall be naturalized unless such petitioner, . . . during all the period referred to in this

subsection [five years] has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

1940, an obligation on parents to provide both material and spiritual needs for children. In re Spak's Petition, 164 F.Supp. 257, 260 (E.D.Pa.1958). *Accord*, In re Halas' Petition, 274 F. Supp. 604 (E.D.Pa.1967); In re Mogus' Petition, 73 F.Supp. 150 (W.D. Pa.1946).

However, while these cases recognize a duty to pay child support, they also make it clear that the failure to make all required child support payments does not in and of itself show an absence of good moral character. As was stated in Halas' Petition, *supra*, 274 F.Supp. at 606:

Had the petitioner made a sincere effort to fulfill his obligation, which is moral as well as legal, we would be more disposed to favorably consider his petition . . . . [W]e do not require perfection from our new citizens . . . *Accord*, Spak's Petition, *supra*, 164 F.Supp. at 260.

■ In the instant case, it is clear that petitioner was under a court order to pay $20.00 per week support to two of his children by his first marriage and that he was in arrears on said payments. It is also clear that for the period from May 17, 1966 until April 9, 1969 petitioner made payments pursuant to the order in the amount of $2,265.00 while falling in arrears in the amount of $730.00. He made these substantial payments while supporting a family of six on a gross salary of less than $8,000.00 per year. Under such circumstances we cannot say that the failure to keep his payments completely current from May of 1966 until April of 1969 shows that there was not a sincere effort on the part of the petitioner to fulfill his obligation.

From the period from April 9, 1969 until April 10, 1970, petitioner made no support payments and his arrearages increased to $1,770.00. However, it is undisputed that on or about April 9, 1969 petitioner's daughter was injured and as a result of said injury petitioner was forced to pay extensive medical bills. Petitioner avers that as a result of these expenses he had insufficient funds with which to comply with the support order. We find his testimony on this point credible, and, therefore, conclude that his failure to make payments from April of 1969 to April of 1970 does not show that petitioner lacks the good moral character required for naturalization.[2]

■ The government contends that the Court is precluded from making a finding that petitioner is of good moral character by the principle of res judicata. It argues that the findings of the Common Pleas Court of Philadelphia requiring petitioner to pay support and finding him in arrears for failure to make payments are dispositive of that issue. With this reasoning we cannot concur. While it is clear that those proceedings are dispositive of the issue of petitioner's legal responsibility to pay support, the rulings do not require a finding concerning the good moral character of petitioner. Thus, while the mitigating circumstances raised by petitioner may not, as the Common Pleas Court has already decided, relieve petitioner of his legal responsibility to pay support, they do not show that he lacked good moral character.

Accordingly, we conclude that petitioner is possessed of good moral character.

---

2. It should be noted that since the adjudication of the Common Pleas Court in 1971 most of the arrearages have been made up.